THOMAS GREGORY PAYNE v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES

No. 8810IC1260

(Filed 5 September 1989)

**Schools § 11; Negligence § 30.1— School for the Deaf—injury during shop class—claim denied**

The Industrial Commission correctly decided in favor of defendant in a personal injury action brought by a student at the North Carolina School for the Deaf against the North Carolina Department of Human Resources arising from injuries suffered during a shop class where the student was attending a small engine repair class in an area adjacent to a grease shop, which contained hydraulic lifts used to raise automobiles; one of those lifts had been leaking hydraulic fluid and the school's maintenance person was replacing a cylinder seal; the maintenance person asked the instructor to bring a special

wrench to him; a plug sealed an opening where hydraulic fluid could be poured into the lift and required a special nut for its removal; the instructor obtained the wrench and nut, took them to the lift, assembled the wrench and placed it over the plug, and turned it one-half to a full turn to be certain he had brought the correct nut; at that point, he left to answer the telephone; plaintiff in the meantime noticed two buckets of hydraulic fluid and presumed, seeing the buckets and that the instructor had placed the wrench on the plug, that the fluid was to be added to the lift; having once watched a fellow student assist in adding that fluid and having discussed the procedure with another student, plaintiff assumed he knew how to put in the fluid; plaintiff went to the lift and turned the wrench to loosen the plug; air pressure in the lift shot the plug out of its hole with explosive force; and plaintiff subsequently required treatment for injury to his right eye with his best-corrective visual acuity in that eye now being 20/200. The standard of care is the exercise of ordinary prudence given the particular circumstances of the situation; the record supports the finding that plaintiff was of sufficient expertise and maturity to be left unsupervised while the instructor spoke on the telephone, the evidence is undisputed that plaintiff was never requested to assist in the repairs on the lift, and plaintiff had been instructed on rules of safety, including a rule requiring that "if it don't pertain to you, don't bother it, leave it alone."

APPEAL by plaintiff from the Decision and Order of the North Carolina Industrial Commission, entered 29 August 1988. Heard in the Court of Appeals 17 May 1989.

*Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A., by C. Scott Whisnant, for plaintiff-appellant.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Richard L. Griffin, for defendant-appellee.*

BECTON, Judge.

This is a personal injury action brought by plaintiff, Thomas Gregory Payne, against the North Carolina Department of Human Resources. Plaintiff sought compensation from the State for injuries he suffered during a shop class at the North Carolina School for

the Deaf. He contends his injuries resulted from the negligence of his shop instructor. On 19 August 1987, a hearing in this matter was held before a deputy commissioner of the North Carolina Industrial Commission. The commissioner found in favor of defendant and denied plaintiff's claim in a decision filed 8 October 1987. Plaintiff appealed to the Industrial Commission, which affirmed the deputy commissioner's ruling. Plaintiff appeals to this court, and we, too, affirm.

I

The facts found by the deputy commissioner, which we supplement with evidence from the record, showed the following: On 31 October 1985, Thomas Gregory Payne, then aged 16, was a senior at the North Carolina School for the Deaf in Morganton. On that date, Mr. Payne attended a shop class on small-engine repair taught by Clifford Hipps ("Instructor Hipps"). No other students were enrolled in the class during that trimester.

Adjacent to the small-engine repair shop is a "grease shop" area inside of which are hydraulic lifts used to raise automobiles. One of these lifts had been leaking hydraulic fluid. On 31 October, Instructor Hipps' brother, Ray Hipps, the school's maintenance person, was replacing a cylinder seal to stop the leakage. Air pressure, by means of which a hydraulic lift operates, was turned on in the lift being repaired.

Instructor Hipps assigned a task to Mr. Payne for the day's class session. The deputy commissioner was unable to find as a fact what the nature of this assignment was. (Mr. Payne testified he was told to clean the cylinder rings for Ray Hipps; Instructor Hipps testified that, as best he could recall, he had told Mr. Payne to work on a small engine, the work to be done at a station some 40 feet from the lift area. For various reasons detailed in the findings, the deputy commissioner found it to be "possible, [but] unlikely" that Mr. Payne had been told to clean cylinder rings.) During the class session, Ray Hipps asked Instructor Hipps to bring a special wrench to him. A plug, sealing an opening where hydraulic fluid could be poured into the lift, required a special nut for its removal. Instructor Hipps obtained the wrench and a nut and took them to the lift. He assembled the wrench, placed it over the plug, and turned it one-half to a full turn to be certain he had brought the correct nut. At this point, his telephone rang, and he left to answer it.

Mr. Payne, in the meantime, noticed two buckets of hydraulic fluid that Ray Hipps had brought into the lift area. He presumed, seeing the buckets and seeing Instructor Hipps place the wrench on the plug, that the fluid was to be added to the lift. Having once watched a fellow student assist "Mr. Hipps" in adding that fluid, and having discussed the procedure with another student, Mr. Payne assumed he knew how to put in the fluid.

Mr. Payne went over to the lift and turned the wrench to loosen the plug. Ray Hipps, at this moment, was seated on the floor of the lift area facing away from the lift itself; Instructor Hipps, talking on the telephone, could not see the small-engine repair shop nor the grease shop. When Mr. Payne loosened the plug, the air pressure in the lift shot the plug out of its hole with explosive force. The plug hit Mr. Payne in the forehead, and oil and dirt blew into his eyes. Mr. Payne subsequently required treatment for an injury to his right eye; his best-corrected visual acuity in that eye is now 20/200.

Among other findings made by the deputy commissioner were that Mr. Payne was "a bright young man [who] generally followed instruction well and was conscientious in his work"; that he was a "good student and was cooperative with his teachers"; that he was trying to be helpful when the accident occurred; and that he had never been instructed in the dangers involved in performing the task he attempted. The Commission, in its decision affirming the deputy commissioner, adopted the commissioner's findings. Mr. Payne argues on appeal that the record does not support the Commission's conclusion that his injury was not the consequence of negligence on the part of Instructor Hipps. We turn now to that question.

II

Appellate review of a decision by the Industrial Commission is confined to two questions of law: 1) whether any competent evidence in the record supports the Commission's findings of fact and 2) whether the findings of fact support the legal conclusions and decision reached by the Commission. *E.g., Paschall v. N.C. Dept. of Correction,* 88 N.C. App. 520, 522, 364 S.E.2d 144, 145, *disc. rev. denied,* 322 N.C. 326, 368 S.E.2d 868 (1988). The single issue presented by this appeal is whether the Commission erred by finding that Mr. Payne's injury did not result from any negligence on the part of his instructor.

To establish actionable negligence, a plaintiff must show 1) that there has been a failure to exercise proper care in the performance of some legal duty which defendant owed plaintiff under the circumstances in which they were placed and 2) that such negligent breach of duty proximately caused plaintiff's injury. *E.g.*, *Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 232, 311 S.E.2d 559, 564 (1984). Mr. Payne argues that Instructor Hipps breached the duty of care by failing to adequately supervise him and by failing to instruct and warn him about any risks posed by the lift. We begin by addressing the degree of care owed to Mr. Payne.

## A. *Instructor Hipps' Duty of Care*

In North Carolina, a teacher is held to the same standard of care which a person of ordinary prudence, charged with the teacher's duties, would exercise in the same circumstances. *Kiser v. Snyder*, 21 N.C. App. 708, 710, 205 S.E.2d 619, 621 (1974). A shop teacher, moreover, is held to the same standard as is any other teacher. *See Izard v. Hickory City Schools Bd. of Educ.*, 68 N.C. App. 625, 626-27, 315 S.E.2d 756, 757 (1984). "The duty generally amounts to an obligation to warn a student of known hazards, particularly those dangers which he may not appreciate because of inexperience." *Id.* at 627, 315 S.E.2d at 758. Schools, moreover, must supervise their pupils adequately, and although a school does not act as an insurer of student safety, it is liable for foreseeable injuries that result from a lack of teacher supervision. *See Hanley v. Hornbeck*, 127 A.D.2d 905, 906, 512 N.Y.S.2d 262, 263-4 (1987).

In *James v. Charlotte-Mecklenburg Bd. of Educ.*, 60 N.C. App. 642, 300 S.E.2d 21 (1983), this court formulated a standard for adequate supervision in a case involving a child injured during student roughhousing while the teacher was away from the classroom. We said that "foreseeability of harm . . . is the test of the extent of the teacher's duty to safeguard her pupils from dangerous acts of fellow pupils, and absent circumstances under which harm to her pupils might have been reasonably foreseen during her absence," the teacher did not have a duty to remain at all times with her charges. *Id.* at 648, 300 S.E.2d at 24. *James*, in essence, restates the rule that the teacher must act with ordinary prudence and employ "the level of care or vigilance . . . commensurate with the degree of danger inherent in a particular situation." Annotation, *Tort Liability of Public Schools and Institutions of*

*Higher Learning for Accidents Associated with Chemistry Experiments, Shopwork, and Manual or Vocational Training*, 35 A.L.R.3d 758, 763 (1971). That duty, however, does not extend so far as to require the teacher "to anticipate the myriad of unexpected acts which occur daily in and about schools and school premises. . . ." *Morris v. Ortiz*, 103 Ariz. 119, 121, 437 P.2d 652, 654 (1968); *cf. Hiatt v. Ritter*, 223 N.C. 262, 265, 25 S.E.2d 756, 758 (1943) ("One is bound to anticipate and provide against what usually happens and what is likely to happen . . . [but not] against what is unusual and unlikely to happen. . . ." (citation omitted) ).

Mr. Payne argues that Instructor Hipps owed him a duty "greater than normal" 1) because Instructor Hipps knew that plaintiff, being deaf, "was inexperienced and not aware of the potential danger" of the lift, and 2) because Instructor Hipps knew that Mr. Payne had a "general[ly] helpful attitude and . . . [a] general curiosity as a deaf child." Thus, Mr. Payne contends that we "must assign a greater standard of care to [Instructor] Hipps as an instructor of the deaf than would be assigned to a teacher in a regular classroom setting."

It is true that the amount of care due a student increases with the student's immaturity, inexperience, and relevant physical limitations. *See Raymond v. Paradise Unified School Dist. of Butte County*, 218 Cal. App.2d 1, 10, 31 Cal. Rptr. 847, 853 (1963) (immaturity); *Izard*, 68 N.C. App. at 627, 315 S.E.2d at 758 (inexperience). The standard, however, remains that of the exercise of ordinary prudence given the *particular circumstances* of the situation. *See Kiser*, 21 N.C. App. at 710, 205 S.E.2d at 621. Plaintiff's characteristics are relevant, along with the other conditions present in the situation, in determining whether Instructor Hipps exercised ordinary prudence in that situation. We therefore consider Instructor Hipps' exercise of the duty of care under the standard of ordinary prudence.

B. *Instructor Hipps Observance of the Duty of Care*

Mr. Payne alleges that Instructor Hipps should have foreseen that injury to Mr. Payne "[was] probable under the facts as they existed." He asserts that the teacher "could not be naive enough not to know that by placing a wrench and a bucket of oil close to the lift that [Mr. Payne] would, because of his general[ly] helpful attitude, and because of his general curiosity as a deaf child, attempt to place oil in the lift." Evidence supports Mr. Payne's con-

PAYNE v. N.C. DEPT. OF HUMAN RESOURCES

[95 N.C. App. 309 (1989)]

tention that the students at his school possess a "general curiosity." Ray Hipps testified that he did not communicate in sign language to the students and was not encouraged to do so because "[t]he kids have a tendency, if you are doing something, if it's nothing but putting in a light, they want to see what's going on." Notwithstanding this evidence, however, we do not agree that the record lends no support to the Commission's decision.

The Commissioner found that no breach of the duty to use reasonable care in supervising had occurred owing to Instructor Hipps' "past experience with [Mr. Payne], who was of sufficient age and maturity to be left unsupervised for a few minutes while working on an assignment." The record indicates that Mr. Payne, at the time of his injury, had completed two trimesters in automotive study and was into his third. A full year of study is three trimesters. Additionally, Mr. Payne "knew basics" about machinery from having worked with machinery with his father. Mr. Payne testified that he understood a person needed to be careful when working around machines.

We are satisfied that the record supports the finding that Mr. Payne was of sufficient experience and maturity to be left unsupervised while Instructor Hipps spoke on the telephone. At the time Instructor Hipps went to answer the call, Mr. Payne was occupied with a task at his worktable in an area away from the lift. To hold that Instructor Hipps should have foreseen that Mr. Payne would leave his assignment and attempt to add oil to the lift would be to impose a burden on the teacher beyond that of reasonable foreseeability. That Mr. Payne was a curious and helpful student is not enough, in our view, to require Instructor Hipps to have foreseen that Mr. Payne would attempt to perform repairs on the lift. We hold, therefore, that Instructor Hipps was not negligent for leaving Mr. Payne unsupervised prior to the injury.

We likewise reject Mr. Payne's contention that Instructor Hipps failed to adequately instruct or warn him about the dangers posed by the lift. As part of Mr. Payne's automotive instruction, Instructor Hipps had given Mr. Payne instruction on how the hydraulic lift operated; this instruction, however, did not pertain to repair work nor to the adding of oil to the lift. The evidence is undisputed that Mr. Payne was never requested to assist in the repairs being performed by Ray Hipps.

PAYNE v. N.C. DEPT. OF HUMAN RESOURCES

[95 N.C. App. 309 (1989)]

Mr. Payne cites *Izard* and *Kiser* for the proposition that a teacher has a duty to warn a student of dangers the student may not appreciate. We do not read those cases, however, as requiring that warnings be given about *any* danger that an instrumentality might pose. Instruction about the operation of a hydraulic lift need not encompass warnings about what might result from efforts to repair it. Again, to hold otherwise is to require the instructor to issue warnings about every imaginable circumstance and is far outside the standard of reasonable foreseeability.

We note, in addition, that Instructor Hipps did instruct Mr. Payne on rules of safety. Each year, students at the school are given a handbook, and the book is reviewed with the students by their teachers. One of the "golden rules" issued to the students is "If it don't pertain to you, don't bother it, leave it alone." Mr. Payne testified that he was familiar with this rule and understood that it applied to his shop class. This warning was adequate to embrace the situation that existed at the time of the accident. The lift did not "pertain" to Mr. Payne, and he had been instructed, in such circumstances, to "leave it alone." We hold, therefore, that Instructor Hipps was not negligent for failing to adequately instruct or warn Mr. Payne about any potential dangers that might result from his attempt to add oil to the lift.

C. *Contributory Negligence*

As we have affirmed the Commission's ruling that no negligence may be imputed to Instructor Hipps, we do not address the additional finding that Mr. Payne's own negligence led to his injuries. We observe only that we view the record as supporting the commissioner's finding that Mr. Payne "did not act as a reasonably prudent person of his age and maturity would have acted under the same or similar circumstances."

III

We hold that the findings of fact made by the Commission are supported by the evidence in this case, and that the findings support the conclusions of law and the decision of the Commission. The decision in favor of defendant is, therefore,

Affirmed.

Judges PHILLIPS and LEWIS concur.