665 S.E.2d 745 (2008)
Jeffrey B. FOSTER, Guardian ad litem for Richard Tyler Spoor, a minor, Plaintiff,
v.
NASH-ROCKY MOUNT COUNTY BOARD OF EDUCATION a/k/a NashRocky Mount Schools; George Norris, former Superintendent of NashRocky Mount Board of Education, in his official capacity; Vicki Wells, former principal of Benvenue Elementary School, in her official capacity; and Harriett Brown, special education teacher at Benvenue Elementary School in both her individual and official capacities, Defendants.
No. COA07-1233.
Court of Appeals of North Carolina.
July 15, 2008.
*746 Stacey B. Bawtinhimer, New Bern, for plaintiff-appellant.
The Valentine Law Firm, by Lewis W. Lamar, Jr., Nashville, and Ernie K. Murray, Rocky Mount, for defendant-appellees Nash-Rocky Mount Board of Education, George Norris and Vicki Wells in their official capacities.
Cranfill Sumner & Hartzog, LLP, by Ann S. Estridge, Alycia S. Levy, and Meredith Taylor Berard, Raleigh, for defendant-appellee Harriett Brown.
HUNTER, Judge.
Jeffrey B. Foster, as guardian ad litem for Richard Tyler Spoor ("plaintiff"), appeals the order granting a motion for summary judgment by the Nash  Rocky Mount County Board of Education ("defendant Board") and Harriet Brown ("defendant Brown"). After careful review, we affirm.

I.
On 18 October 1999, plaintiff was attending Benvenue Elementary School in Rocky Mount. At that time, plaintiff was seven years old and had, among other conditions, the following disabilities, which qualified him as a special needs child: cerebral palsy, hydrocephalus, and seizure disorder. As a result *747 of the hydrocephalus, plaintiff required the placement of a shunt in his brain since infancy. The shunt comprises a catheter inserted into plaintiff's brain, a tube through which fluid drains from the catheter into his abdomen, and a valve connecting the two.
Plaintiff had been attending public schools in Nash County since 1994, and had been attended since infancy by Jeanna Johnson, the school's physical therapist. She testified that, as of September 1999, the month before the incident at issue, plaintiff was able "to stand without hand support easily" and was capable of communicating his needs and wants.
As a special education student, plaintiff had an Individualized Education Program ("IEP") addressing his physical needs and abilities. For the 1999-2000 school year, plaintiff's IEP contained no requirements or information on his toileting procedures or needs.
When plaintiff needed to visit the bathroom, either defendant Brown or one of the teaching assistants would take plaintiff. According to defendant Brown, the procedure consisted of walking plaintiff forward until he faced the toilet, pulling down plaintiff's pants as he held on to his walker, turning him around, placing him on the toilet seat, and pushing plaintiff's walker directly up to him. Defendant Brown would then close the door enough for privacy, but ajar enough that she could monitor him. Johnson, plaintiff's physical therapist, testified that this procedure was appropriate, and that plaintiff did not need someone "close[ly] guarding [him] with their hands" while in the bathroom. Defendant Brown testified that they had followed the same procedure for the previous three years plaintiff was in her classroom, for a total of more than 1,455 times, without incident.
Defendant Brown testified that she followed this procedure on 18 October 1999. She testified that she was sitting outside the bathroom door reading to plaintiff for approximately five to ten minutes when plaintiff, without saying anything to defendant Brown, attempted to stand up. Per defendant Brown's testimony, plaintiff grasped his walker, but when his feet hit the floor, they slipped out from under him in urine that was on the floor. Defendant Brown testified that she immediately reached for plaintiff but was unable to get to him in time. Plaintiff fell off the toilet seat, hitting the back of his head on the front of the toilet seat.
Within an hour of the fall, plaintiff was examined by a physician, Dr. Kinnaird, who saw a scratch on the back of plaintiff's head that was "[v]ery superficial[,]" but no other injuries. Dr. Kinnaird performed a neurological examination of plaintiff at that time and found plaintiff to be normal. Plaintiff's mother stated that plaintiff acted normally after the fall. Two weeks later, plaintiff began vomiting; on 3 November 1999, Dr. Timothy George, a neurosurgeon, determined that the shunt in plaintiff's head had malfunctioned. Plaintiff filed suit against defendants for damages arising from the accident.[1] Defendants filed motions for summary judgment which were granted by the court on 29 May 2007. Plaintiff appeals.

II.
Summary judgment is only appropriate when there are no genuine issues of material fact and any party is entitled to judgment as a matter of law. N.C. Gen.Stat. § 1A-1, Rule 56 (2007). "The moving party has the burden of establishing the lack of any triable issue," and "[a]ll inferences of fact from the proof offered at the hearing must be looked at in the light most favorable to the nonmoving party." Gregory v. Floyd, 112 N.C.App. 470, 473, 435 S.E.2d 808, 810 (1993).

A. Defendant Brown
Plaintiff alleges that genuine issues of material fact exist as to whether defendant Brown was negligent in her supervision of him.
In order to recover for negligence, plaintiff must establish (1) a legal duty, (2) a breach thereof, and (3) proximate cause of the injury. In addition, North Carolina *748 case law has stated that a teacher has a duty to abide by that standard of care "which a person of ordinary prudence, charged with his duties, would exercise under the same circumstances."
Izard v. Hickory City Schools Bd. of Education, 68 N.C.App. 625, 626-27, 315 S.E.2d 756, 757 (1984) (citations omitted).
As to the duty owed a student by his teacher, it is well settled that "a teacher is held to the same standard of care which a person of ordinary prudence, charged with the teacher's duties, would exercise in the same circumstances." Payne v. N.C. Dept. of Human Resources, 95 N.C.App. 309, 313, 382 S.E.2d 449, 451 (1989). In Payne, where the plaintiff was a deaf child who had injured himself while at school, this Court elaborated on the duty owed by teachers to students:
It is true that the amount of care due a student increases with the student's immaturity, inexperience, and relevant physical limitations. The standard, however, remains that of the exercise of ordinary prudence given the particular circumstances of the situation. Plaintiff's characteristics are relevant, along with the other conditions present in the situation, in determining whether [defendant teacher] exercised ordinary prudence in that situation.
Payne, 95 N.C.App. at 314, 382 S.E.2d at 452 (citations omitted; emphasis omitted).
The predominant issue as to duty and breach thereof is whether the harm suffered was foreseeable. James v. Board of Education, 60 N.C.App. 642, 648, 300 S.E.2d 21, 24 (1983); Payne, 95 N.C.App. at 313, 382 S.E.2d at 452. Thus, defendant Brown's duty was to exercise ordinary prudence, taking into consideration plaintiff's particular characteristics, to protect him from foreseeable harm; breach of that duty would be failing to exercise that ordinary prudence.
The final element  the question of whether plaintiff's fall was the proximate cause of his injuries  is the matter of some debate between the parties; however, because plaintiff cannot show that any issue of material fact as to breach exists, this issue is moot.
Plaintiff contends that there is an issue of material fact as to whether defendant Brown acted negligently  that is, breached her duty  because discrepancies exist in the evidence. Specifically, plaintiff points to discrepancies in two general categories: First, the toileting procedure, and second, various details of the accident.

i.
Plaintiff states that defendant Brown's testimony as to the toileting procedure is contradicted by the testimony of others. At the summary judgment hearing, defendant Brown's attorney stated that, on the day of the accident, defendant Brown took plaintiff to the bathroom "like she did every other time in the three years that he was in her classroom[,]" following the same toileting procedure she had followed 1,455 times before. Plaintiff first states that defendant Brown "offered no evidence to prove that she and her assistants used the exact same procedure over 1455 times" (emphasis omitted), then notes the testimony from four other witnesses  Jeanna Johnson, the school's physical therapist; teaching assistants Susan Harrison Alston and Pauline Renee Harrison; and Vicki Wells, school principal  that he claims are evidence that "the toileting procedure varied."
Plaintiff mischaracterizes the testimony of two witnesses. First, he states that Johnson testified in her deposition that she observed defendant Brown putting the stool underneath plaintiff's feet. The portion of Johnson's testimony to which plaintiff points is clearly a description of Johnson taking plaintiff to the bathroom "the one time" she actually did so. Johnson states that she put "the stool underneath his feet[,]" but that "[she] only remember[s] [toileting him] once." Second, plaintiff states that Alston admitted in her deposition they would "sometimes ... leave [plaintiff] while he was in the bathroom." However, Alston's actual statement in response to a question as to whether she or defendant Brown would walk away while plaintiff was on the toilet was: "We may have. I don't know."
Plaintiff accurately states the remaining testimony. We thus resolve in plaintiff's favor and take as true all of these legitimate *749 discrepancies, giving us these statements as to toileting procedure: Per the teaching assistants who sometimes took plaintiff to the toilet, there was not always a stool under plaintiff's feet when he was taken to the toilet; per the principal, who did not take plaintiff to the toilet, plaintiff's walker was "usually pushed to the side of the door" while plaintiff was on the toilet; and per Harrison, the teaching assistant attending plaintiff might have to "run across the hall" while plaintiff was on the toilet.

ii.
As to the incident itself, plaintiff asserts that defendant Brown's credibility is at issue because of the certain contradictions. Two of plaintiff's statements are, again, mischaracterizations of the testimony concerned.
First, in her deposition, Wells stated that defendant Brown told her that one of the teaching assistants, not defendant Brown herself, was with plaintiff when he fell off the toilet. However, the conversation Wells recalls during which this information was shared took place in the spring of 2006, seven years after the incident occurred. Next, plaintiff argues that defendant Brown's deposition testimony conflicted with her counsel's argument to the court at the summary judgment hearing. Specifically, defendant Brown's counsel stated that, on the day of the incident, "for the first time ever, the first and only time, in the three years that she had him in the classroom, [plaintiff] suddenly and without warning stood up." However, in her deposition, when asked about plaintiff's impulsivity, defendant Brown stated that she did not remember a time when plaintiff tried to get off the toilet himself, but "I guess that's possible."
Again, construing all legitimate discrepancies in plaintiff's favor and taking them as true, we are left with these statements: Per Alston and Harrison, plaintiff was impatient in the bathroom and would want whoever was attending him to help him off the toilet immediately once he told them he was finished; defendant Brown had, at some time previous to the incident at hand, witnessed plaintiff fall;[2] and defendant Brown may have been as far away from plaintiff as two feet when he was on the toilet.

iii.
At no point, however, does plaintiff explain how these discrepancies show that a genuine issue of material fact exists in this case. The sum total of the evidence above, taken in the light most favorable to plaintiff, is this: On some days, but not specifically the date in question, a footstool might not have been provided for plaintiff, the person attending him might have had to leave her seat by the bathroom door for a moment, plaintiff might have acted impulsively, and defendant Brown might have been as far as two feet away from plaintiff. Also, defendant Brown had witnessed plaintiff fall  again, not on the date in question, but at some unidentified point in the past. Plaintiff does not explain how such information about general procedures and conduct not specific to the date the incident occurred creates a genuine issue of material fact as to defendant Brown's breach of her duty.
Plaintiff concludes that, for summary judgment purposes, the trial court "must believe the testimony of [plaintiff's mother] that [defendant] Brown, on the day of the accident, shut the door and left him alone which was admittedly a breach of the standard of care." However, this again is general information, as plaintiff's mother certainly was not present when plaintiff fell. We do not agree with plaintiff that the trial court was required to take as true a version of the incident given by someone who did not witness it.
Thus, plaintiff has not shown how, looking at all the facts in the light most favorable to him, a genuine issue of material fact exists as to how defendant Brown's actions constituted a failure to exercise ordinary prudence to prevent foreseeable harm, and thus a breach of her duty to supervise plaintiff. As such, *750 plaintiff cannot show that summary judgment was improperly granted.

B. Defendant Board
As to defendant Board, plaintiff argues that it should be held liable in one of three ways: First, indirectly liable under a theory of respondeat superior; second, directly liable because it failed to warn the student of known hazards; or third, directly liable because of its failure to adequately supervise its students and defendant Brown. As mentioned above, by the time of the hearing on summary judgment, four of the six claims instituted by plaintiff had been dismissed either by order of the trial court or via voluntary dismissal by plaintiff; the summary judgment order at issue therefore resolved only the above-discussed claim against defendant Brown and the last cause of action against defendant Board: That concerning negligent supervision. As such, we address only the final argument.[3]
Specifically, plaintiff's argument on this point is that defendant Board is responsible for foreseeable injuries resulting from negligent supervision by defendant Brown, a teacher in its employ. The elements that a plaintiff must prove to show a claim for negligent hiring, supervision, and retention are:
"(1) the specific negligent act on which the action is founded ... (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; and (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used ordinary care in `oversight and supervision,' ...; and (4) that the injury complained of resulted from the incompetency proved."
Medlin v. Bass, 327 N.C. 587, 591, 398 S.E.2d 460, 462 (1990) (emphasis omitted; alteration in original).
Because we have affirmed above the grant of summary judgment to defendant Brown on the claim of negligence against her, plaintiff cannot prove the first element of this claim: That defendant Brown committed a negligent act. As such, one of the essential elements of this claim cannot be proven. This argument is without merit, and the order granting summary judgment to defendant Board is therefore affirmed.

III.
Plaintiff's next argument is that Judge Griffin, the judge who presided over the hearing, should have recused himself ex mero motu because a series of comments he made during the hearing revealed his prejudice against plaintiff's position. This argument is without merit.
Among the comments by Judge Griffin that plaintiff mentions in his argument were: "why [is plaintiff] in public school?"; in reply to plaintiff's counsel's remark that the public schools are obligated to educate students with disabilities, "[w]ell we have lost our way, haven't we? Common sense has gone out the window completely"; and "the tax payers were saddled with providing all this[,] is that right?"
While these comments and the others mentioned by plaintiff were irrelevant and show clearly that the judge thought plaintiff, as a matter of principle, should not be in a regular school, plaintiff's argument that he should have recused himself ex mero motu is without merit. A judge is under no duty to recuse himself on his own motion, and plaintiff did not make a motion for recusal at the lower court, meaning this issue is not preserved for our review. See In re Key, 182 N.C.App. 714, 719, 643 S.E.2d 452, 456 (2007).

IV.
Because plaintiff has not shown that a genuine issue of material fact exists, we affirm *751 the trial court's finding of summary judgment.
Affirmed.
Judges McCULLOUGH and ELMORE concur.
Report per Rule 30(e).
NOTES
[1] The original suit also named two individual members of defendant Board  George Norris and Vicki Wells  but the claims against them were disposed of prior to the summary judgment order.
[2] Defendant Brown admitted in her answer that she had witnessed plaintiff fall prior to the incident in question. Plaintiff states that defendant Brown also admitted this fact in her deposition, but as he points to no specific page in the 189-page transcription of that deposition, we cannot verify that statement.
[3] As a result, plaintiff's repeated insistence that defendant Brown was acting within the scope of her employment for defendant Board is irrelevant. Further, even were we to address the theory of respondeat superior, defendant Board would only be liable for torts committed by defendant Brown, its agent. See, e.g., Snow v. DeButts, 212 N.C. 120, 122, 193 S.E. 224, 226 (1937). Because we affirm summary judgment in favor of defendant Brown on the torts in question, no liability can devolve on defendant Board via this theory.