JANICE D. ROYAL, ADMINISTRATRIX OF THE ESTATE OF DARION TYRON ROYAL AND JANICE D. ROYAL, INDIVIDUALLY, PLAINTIFFS v. LAMAR ARMSTRONG, MARCIA ARMSTRONG, AND BRIAN BURTON, DEFENDANTS

No. COA99-255

(Filed 1 February 2000)

## 1. Premises Liability— drowning—private home pool party

The trial court did not err in granting defendants' motion for summary judgment in a negligence action for the drowning death of an eight-year-old boy at a private home pool party based on the theory of premises liability, even though plaintiffs allege there was no lifeguard on duty and that adequate safety devices were not available, because: (1) private homeowners are not required to provide a lifeguard at a private pool when guests are swimming; (2) plaintiffs failed to establish that the safety devices were required by law or ordinance, and that even if such devices were necessary to meet the reasonable landowner standard, their absence was the proximate cause of the victim's death; and (3) plaintiffs did not allege any sort of defect in the pool or surrounding premises that proximately caused the victim's death.

## 2. Negligence— breach of duty to supervise—direct duty— delegation of duty—drowning—private home pool party

The trial court did not err in granting defendants' motion for summary judgment in a negligence action for the drowning death of an eight-year-old boy at a private home pool party based on the theory of defendant-Armstrongs' breach of duty to supervise because: (1) all the evidence is that defendants acted reasonably while they were directly supervising and watching the children, including that defendants only allowed the children to enter the pool after establishing rules about the pool, defendants asked

two adults who sat by the pool to watch the children while defendants were preparing food for the party in the kitchen where they could still see the pool, and there was no indication that any of the children were not capable swimmers; and (2) defendants acted reasonably in delegating the supervision of the children to two able-bodied adults, who had ample incentive to monitor the swimmers closely since their children were also attending the party and their son was the guest of honor.

### 3. Negligence— breach of duty to supervise—delegation of duty—drowning—private home pool party

The trial court did not err in granting defendants' motion for summary judgment in a negligence action for the drowning death of an eight-year-old boy at a private home pool party, based on the theory of the Burtons' breach of duty to supervise being attributable to defendant-Armstrongs, because the evidence reveals: (1) defendant-Burton warned the children who were using the diving board to be sure the diving area was clear before jumping or diving from the board; (2) Burton watched both the deep and shallow ends of the pool; (3) Burton acted immediately when he saw the victim at the bottom of the pool; (4) there is no indication that a different outcome would have resulted if Burton had dived into the pool himself instead of sending another swimmer to check on the victim.

### 4. Emotional Distress— negligent infliction—drowning—private home pool party—no negligence as a matter of law

The trial court did not err in granting defendants' motion for summary judgment on the negligent infliction of emotional distress claim based on the drowning death of an eight-year-old boy at a private home pool party, because the court already determined that defendants were not negligent as a matter of law.

Appeal by plaintiffs from judgment entered 25 August 1998 by Judge Robert L. Farmer in Johnston County Superior Court. Heard in the Court of Appeals 28 October 1999.

*Foil Law Offices, by Martha McKee and Laura Stephenson Irwin, for plaintiff-appellants.*

*Patterson, Dilthey, Clay & Bryson, L.L.P., by Ronald C. Dilthey, for defendant-appellees Lamar Armstrong and Marcia Armstrong.*

**ROYAL v. ARMSTRONG**

[136 N.C. App. 465 (2000)]

EDMUNDS, Judge.

Plaintiffs appeal the trial court's grant of defendants' motion for summary judgment in this negligence action. We affirm.

On 17 July 1999, defendants (Mr. and Mrs. Armstrong) hosted a pool party for Robbie Burton. Eight-year-old Darion Tyron Royal (Darion), who had visited defendants in the past, was one of the invited guests. Darion's grandmother, plaintiff Janice Royal, and Darion's mother dropped him off at defendants' house around 6:17 p.m. At that time, Darion had known how to swim for approximately one and one-half years. The children were not allowed to enter defendants' private pool until Mrs. Armstrong came home from work. When Mrs. Armstrong arrived, which was shortly after Darion's appearance, she set down for the children several rules for using the pool. One of the rules was that each child should wait until the diving area was clear of other children before jumping or diving off the diving board.

Once Mrs. Armstrong briefed the children, they were allowed to swim. Although the numbers varied, between seven and ten children were usually in the pool at any given time. A few minutes after opening the pool for use, Mrs. Armstrong asked Brian and Liz Burton, parents of the guest of honor, to watch the swimmers. While the Burtons stayed outside by the pool, Mrs. Armstrong went inside the house to prepare hotdogs for the children. Other parents who attended the party helped Mrs. Armstrong inside the house. She could see the pool from her vantage point in the kitchen.

Mr. Armstrong arrived home around 6:45 p.m. When he entered the pool area, he saw Mrs. Burton near the pool-side table and Mr. Burton close to the pool's ladder. He spoke briefly with the Burtons before joining Mrs. Armstrong and other adults who were preparing food in the house. Before going inside, he saw some children in the shallow end of the pool, while others were getting out of the water to jump off the diving board, but did not observe any unusual behavior.

Mr. Burton was a swimmer and had experience as a lifeguard. He observed that the children were all having a good time in the pool. Some were playing a game with a "nerf" type ball in which one child would throw the ball as another child would run off the diving board in an attempt to catch it. Mr. Burton instructed the children not to run to the board and to be sure the diving area in front of the board was clear before jumping off the diving board.

After the "nerf" game ended, some of the children, including Darion, remained in the deep end of the pool. Mr. Burton continued to observe the children in both ends of the pool. He noticed that Darion was sitting at the bottom of the pool. Although his first reaction was that Darion was playing, he was concerned and told one of the children to swim down to check on Darion. When the child surfaced, he reported to Mr. Burton, who had risen from the chair in which he had been sitting, that Darion was fine and that his eyes were open. Mr. Burton sent the child back down to have Darion come up. The child brought Darion to the surface, and Mr. Burton pulled him out of the water and began administering CPR.

Mr. Armstrong had been in the house only a matter of minutes when someone rushed in to report something was wrong with Darion. Mr. Armstrong immediately went out to the pool where Mr. Burton was administering CPR. The two men were able to expel some water from Darion's lungs. Paramedics transported Darion to the hospital, but he did not survive. The cause of death was drowning. No one at defendants' pool party reported observing Darion display any signs of distress before he was observed at the bottom of the pool, and no evidence was presented as to specific events that led to the drowning.

Plaintiff Janice Royal brought suit both as administratix of Darion's estate and in her individual capacity as Darion's grandmother. She alleges that defendants' negligence was the proximate cause of Darion's death. Defendants' motion for summary judgment was heard on 20 August 1998 in Wake County Superior Court, and on 25 August 1998, the trial court granted defendants' motion. Plaintiffs appeal.

Summary judgment is appropriate where there is no genuine issue of material fact and where the movant is entitled to judgment as a matter of law. *See Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971). While there is a presumption that the trial court found facts from proper evidence sufficient to support the judgment, *see J.M. Thompson Co. v. Doral Manufacturing Co.*, 72 N.C. App. 419, 423-24, 324 S.E.2d 909, 912 (1985), we review the record in the light most favorable to the nonmovant, *see Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975). "Even though summary judgment is seldom appropriate in a negligence case, summary judgment may be granted in a negligence action where there are no genuine issues of material fact and the plaintiff fails to show one of the elements of negligence." *Lavelle v. Schultz*, 120 N.C. App. 857, 859, 463 S.E.2d

567, 569 (1995) (citations omitted). The elements of negligence are duty owed by defendants to plaintiffs and nonperformance of that duty proximately causing plaintiffs' injury. *See Camalier v. Jeffries*, 340 N.C. 699, 460 S.E.2d 133 (1995).

## I. Wrongful Death

Plaintiffs' action for wrongful death is premised upon three theories of liability. We review these theories seriatim.

### A. Premises Liability

[1] Plaintiffs contend that defendants were negligent because no lifeguard was on duty and that adequate safety devices were not available at their pool. We must review this issue in light of our Supreme Court's holding in *Nelson v. Freeland*, which "eliminate[d] the distinction between licensees and invitees by requiring a standard of reasonable care toward all lawful visitors." 349 N.C. 615, 631, 507 S.E.2d 882, 892 (1998). Because the Supreme Court further determined that *Nelson* was to be applied retroactively, it applies to the case at bar. Cases that are factually similar but whose outcomes are based on an analysis of a visitor's status are of limited value. *See, e.g., Howard v. Jackson*, 120 N.C. App. 243, 461 S.E.2d 793 (1995).

Nevertheless, the substitution of a "reasonable care" standard for earlier distinctions between the duties a host owed to invitees and to licensees in determining premises liability does not mean that summary judgment is inappropriate where, as a matter of law, "there are no genuine issues of material fact and the plaintiff fails to show one of the elements of negligence." *Lavelle*, 120 N.C. App. at 859, 463 S.E.2d at 569 (citations omitted); *see Freeman v. Sugar Mountain Resort, Inc.*, 351 N.C. 184, 522 S.E.2d 582, (1999) (per curiam) (reversing 134 N.C. App. 73, 516 S.E.2d 616 (1999) for reasons stated in dissenting opinion of Lewis, J.). "[W]e do not intend for owners and occupiers of land to undergo unwarranted burdens in maintaining their premises. Rather, we impose upon them only the duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors." *Nelson*, 349 N.C. at 632, 507 S.E.2d at 892.

There is no evidence of negligence related to defendants' use or maintenance of their premises. Although plaintiffs alleged that there were no lifeguards on duty while the children were swimming, we never have held that private homeowners are required to provide a lifeguard at a private pool when guests are swimming, and we make

no such holding now. Plaintiffs have alleged further that no whistles, alarms, or other signaling devices were available and that the pool was not equipped with safety lines or other similar lifesaving devices (although the guests used floatation toys). However, plaintiffs failed to establish that such equipment was required by law or ordinance, and they have been unable to demonstrate that, even if such devices were necessary to meet the reasonable landowner standard, their absence was the proximate cause of Darion's death. *See Bray v. A & P Tea Co.*, 3 N.C. App. 547, 165 S.E.2d 346 (1969). The evidence establishes that the presence of such devices would not have prevented the tragic outcome. An alarm triggered by a disturbance in the water would have been ineffective at a pool party attended by splashing, swimming children. Uncontested evidence was presented that Darion was a competent swimmer. Because no one observed him in distress before Mr. Burton saw him at the bottom of the pool, lifesaving devices would have been useless; once Mr. Burton realized Darion was in trouble, rescue efforts proceeded expeditiously.

The instant case is similar to *Sasser v. Beck*, 65 N.C. App. 170, 308 S.E.2d 722 (1983), in which a child swimming in a motel pool unattended by adults was found at the bottom of the pool. Affirming the trial court's directed verdict for the defendant motel, we stated:

> Plaintiff offered no evidence showing that he sustained his injuries by reason of some defect in the pool, that additional safety precautions would have prevented the injuries, or that their absence proximately caused the accident. . . .
>
>     . . . .
>
> . . . The evidence shows that an unfortunate injury occurred, but leaves to pure speculation the question of the cause.

*Id.* at 171-72, 308 S.E.2d at 723 (citations omitted). Plaintiffs in the case at bar also have not alleged any sort of defect in the pool or surrounding premises that proximately caused Darion's death. Therefore, plaintiffs have failed to establish a claim for premises liability as a matter of law.

### B. Breach of Duty to Supervise

[2] Plaintiffs contend that defendants failed properly to supervise the children at the party. We agree that defendants were required to exercise reasonable care supervising children lawfully using the pool at their invitation. *See Corda v. Brook Valley Enterprises, Inc.*, 63

N.C. App. 653, 306 S.E.2d 173 (1983) (holding that lifeguard owed a country club member, who drowned in club pool while swimming legally, the duty to exercise the care of a reasonably prudent lifeguard). Also instructive are cases addressing the duty of a teacher or day care provider. In *Pruitt v. Powers*, we stated that "[w]hile North Carolina case law does not specifically address the duty owed by day care providers to the children under their supervision, our courts have held that the appropriate standard of care for a school teacher is that of a person of ordinary prudence under like circumstances." 128 N.C. App. 585, 590, 495 S.E.2d 743, 747 (1998) (citing *Daniel v. City of Morganton*, 125 N.C. App. 47, 54, 479 S.E.2d 263, 268 (1997)). We modeled the standard of care for day care providers after the standard imposed upon teachers, which is that standard of care " 'a person of ordinary prudence, charged with his duties, would exercise under the same circumstances.' " *Izard v. Hickory City Schools Bd. of Education*, 68 N.C. App. 625, 626-27, 315 S.E.2d 756, 757-58 (1984) (quoting *Kiser v. Snyder*, 21 N.C. App. 708, 710, 205 S.E.2d 619, 621 (1974) (citation omitted)).

While an adult who volunteers to host or supervise a child's pool party is in a position only somewhat analogous to that of a paid teacher or day care provider, each, nevertheless, is entrusted with the welfare of a child. Consistent with the holdings in the cases cited above, we believe that such adult hosts or supervisors have a duty to the children to exercise a standard of care that a person of ordinary prudence, charged with similar duties, would exercise under similar circumstances. As with students, "the amount of care due . . . increases with the student's immaturity, inexperience, and relevant physical limitations." *Payne v. N.C. Dept. of Human Resources*, 95 N.C. App. 309, 314, 382 S.E.2d 449, 452 (1989) (citations omitted).

The evidence in the case at bar establishes that between seven and ten children were swimming in the pool. Mrs. Armstrong allowed the children to enter the pool only after establishing rules about the pool, and later Mr. Burton reiterated some of the rules. Shortly after she allowed the children to begin swimming, but before she left the pool area, Mrs. Armstrong asked the Burtons to watch the children. Mrs. Armstrong then went into the kitchen to prepare food for the party. From this location she could see the pool. Mr. Armstrong also watched the children playing in the pool for a short time before he entered the kitchen. When Mr. Armstrong left the pool area, Mrs. Burton was at a pool-side table and Mr. Burton was in the area by the pool's ladder. Neither Darion's grandmother nor mother placed any

limitation on his use of the pool. There is no indication that any of the children were not capable swimmers. The record indicates that Mr. Burton realized Darion was in trouble so shortly after Mr. Armstrong left the pool that Mr. Armstrong did not even have time to set his jacket down before someone entered the house to request that 911 be called. Therefore, all the evidence is that defendants acted reasonably while they were directly supervising and watching the children; no evidence suggests that their direct supervision was negligent.

We next consider whether it was reasonable for defendants to delegate the supervision of the children to the Burtons. It does not appear to us unreasonable for a parent to delegate the pool-side duties to another equally capable individual. In the case at bar, defendants left the children in the care of two able-bodied adults with no physical handicaps that would prevent them from rescuing a child in trouble. Mrs. Armstrong specifically asked the Burtons to watch the children before she went inside to work on the food. By doing so, she entrusted her own three children, who were among those playing in and around the pool, to the care of the Burtons. Moreover, the Burtons' son was the guest of honor, and the record suggests that other Burton children also may have attended the party; consequently, the Burtons had ample incentive to monitor the swimmers closely. Defendants were readily accessible should trouble arise, and, in fact, Mr. Armstrong was able to help Mr. Burton administer CPR. All the evidence indicates that defendants reasonably delegated supervision duties to the Burtons, while no evidence indicates that the delegation was negligent. Therefore, defendants were not negligent in delegating the duty of attending the swimmers to the Burtons.

## C. Negligence by the Burtons

[3] Plaintiffs also contend that the Burtons were negligent in exercising the supervisory duties delegated to them, and the Burtons' negligence should be attributable to defendants. Assuming *arguendo* that the Burtons were agents of defendants, a question we do not reach, no evidence suggests that the Burtons were negligent. They were not deposed. Mr. Burton submitted an affidavit stating that he warned the children using the diving board to be sure the diving area was clear before jumping or diving from the board, that he watched both the deep and shallow ends, and that he acted immediately when he saw Darion at the bottom of the pool. Nothing done or not done by Mr. Burton as reflected in this affidavit can be construed as negligence; instead, the affidavit presents a picture of a supervisor who was properly and appropriately vigilant. Although a witness for plain-

tiffs stated in an affidavit: "I also question the judgment of an individual who saw a child on the bottom of a pool, then sends another child to check on him," this expression of opinion is not evidence of negligence. There is no indication in the record or even in the affidavit quoted above that if Mr. Burton had dived in himself rather than sending another swimmer to check on Darion, the outcome would have been different. Therefore, even if the Burtons were agents of defendants, because the Burtons were not negligent, it follows that defendants cannot be deemed vicariously negligent.

In light of uncontested evidence that defendants exercised reasonable care toward Darion, the trial court properly granted defendants' motion for summary judgment as to plaintiffs' claim for wrongful death. This assignment of error is overruled.

## II. Negligent Infliction of Emotional Distress.

[4] Plaintiffs next argue that the court erred in granting defendants' motion for summary judgment as to plaintiffs' claim of negligent infliction of emotional distress. However, because we have determined above that defendants were not negligent as a matter of law, this claim also fails. This assignment of error is overruled.

The trial court's grant of summary judgment in favor of defendants is affirmed.

Affirmed.

Judges McGEE and SMITH concur.