SUMMER NOWLIN AND JOEL NOWLIN, PLAINTIFFS
v.
MORAVIAN CHURCH IN AMERICA, SOUTHERN PROVINCE AND LAUREL RIDGE
CAMP, CONFERENCE AND RETREAT CENTER, DEFENDANTS

No. COA12-1290

Filed 16 July 2013

1. **Negligence—assault on camper by counselor—duty of care**

   Camps and their employees have a duty to their campers to exercise the same standard of care that a person of ordinary prudence, charged with the duty of supervising campers, would exercise under the same circumstances. This duty of care is relative to each camper's maturity; thus, the foreseeability of harm to the individual camper is the relevant test which defines the extent of the duty to safeguard campers from the dangerous acts of others.

2. **Negligence—camper assaulted by counselor—safe environment during game—summary judgment for defendants**

   Camp owners did not breach their duty of care to a camper by failing to maintain a safe environment for a last-night activity known

as the Game, during which the camper was sexually assaulted. Defendants' procedural safeguards adequately established that defendants acted reasonably in their supervision of the Game, particularly in light of the maturity level of the participants.

**3. Negligence—assault on camper by counselor—training and supervision of counselor**

Summary judgment was properly entered for defendant camp owners in a case arising from a sexual assault against a camper by a counselor. The undisputed evidence demonstrated as a matter of law that defendants acted reasonably in the training and hiring of the counselor and that the counselor's conduct was unforeseeable by defendants.

**4. Appeal and Error—brief—post-sexual assault conduct—lack of value**

In an action arising from a sexual assault against a camper by a counselor, the Bar was encouraged to consider carefully the relevance on appeal of information such as the camper's post-assault conduct, given its potential harm and lack of value.

Appeal by plaintiffs from order entered 12 July 2012 by Judge Lindsay R. Davis, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 27 March 2013.

*Elliot Pishko Morgan, P.A., by David Pishko and Lauren Weinstein, for plaintiff-appellants.*

*Davis and Hamrick, L.L.P., by H. Lee Davis, Jr., Ann C. Rowe, and Katherine M. Barber, for defendant-appellees.*

CALABRIA, Judge.

Summer Nowlin ("Summer") and her father, Joel Nowlin, (collectively "plaintiffs") appeal from an order granting summary judgment in favor of Moravian Church in America, Southern Province and Laurel Ridge Camp, Conference and Retreat Center (collectively "defendants"). We affirm.

## I. Background

In July 2008, sixteen-year-old Summer attended a summer camp owned and operated by defendants. On 18 July, the last night of camp, an activity called "the Game" was conducted. The purpose of the Game was

for campers to sneak around camp staff members through a wooded area, in the dark, and ring a bell located at the top of a hill. The Game was restricted to senior high campers and players were required to play with partners for safety purposes.

Summer's partner in the Game was her friend Molly. At some point, Summer and Molly met with camp staff members Raj Crawford ("Crawford") and Wes Harrison. Smith and Harrison then left together, leaving Summer alone with Crawford.

According to Summer, once she and Crawford were alone, he kissed her, pushed her down on her back, held her down, and had sexual intercourse with her. After the incident was completed, Summer returned to a dining hall. She did not report her encounter with Crawford to anyone at the camp or lodge any complaint regarding the alleged sexual assault until several months later. When confronted with the allegation, Crawford initially denied the sexual encounter but later claimed the encounter was consensual.

Plaintiffs filed a complaint and an amended complaint against defendants in Forsyth County Superior Court alleging negligence. Plaintiffs' complaint alleged, *inter alia*, that defendants were negligent in their hiring, retention, and supervision of Crawford. In addition, the complaint alleged that defendants negligently failed to provide Summer with a safe environment when it conducted the Game. Plaintiffs also alleged as a result of defendants' negligence, Summer suffered severe emotional distress.

Defendants filed an answer and a motion for summary judgment. The trial court granted defendants' motion on 12 July 2012, finding that no issues of material fact existed and that defendants were entitled to judgment as a matter of law. Plaintiffs appeal.

## II. Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

## III. Negligence

Plaintiffs argue the trial court erred by granting summary judgment in favor of defendants because there was a genuine issue of material fact

as to whether defendants negligently created an unsafe environment for Summer. We disagree.

In order to prevail on a negligence claim, a plaintiff must prove "(1) that defendant failed to exercise proper care in the performance of a duty owed plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances." *Lavelle v. Schultz*, 120 N.C. App. 857, 859-60, 463 S.E.2d 567, 569 (1995).

A. Duty of Care

[1] In the instant case, there is no dispute that defendants owe Summer a duty of care. Instead, the issue in this case is the extent of that duty of care. Both parties agree that there are no North Carolina cases that address the duty a camp owes to its campers. However, there are cases which examine the duty owed by individuals supervising minor children in other contexts. Thus, in order to determine the duty of care defendants owed to Summer, we look to *Pruitt v. Powers*, 128 N.C. App. 585, 495 S.E.2d 743 (1998) and *Royal v. Armstrong*, 136 N.C. App. 465, 524 S.E.2d 600 (2000) for guidance.

In *Pruitt*, a mother brought a negligence action against a daycare center owner for injuries her three year old sustained when he fell at day care as a result of playful pushing with classmates. 128 N.C. App. at 586, 495 S.E.2d at 744. This Court found that the defendant had been notified of similar pushing incidents and knew and appreciated the danger that someone could be hurt if the pushing incidents continued. This Court analogized the duty owed by daycare providers to the duty owed to school children by teachers and held that daycare providers with children under their supervision "have a duty to abide by that standard of care which a person of ordinary prudence, charged with his duties, would exercise under the same circumstances." *Id.* at 590, 495 S.E.2d at 747 (internal quotations and citations omitted). The Court further explained that

> [t]he amount of care due a student increases with the student's immaturity, inexperience, and relevant physical limitations. Day care providers, however, cannot be expected to anticipate the myriad of unexpected acts which occur daily in and about schools, and are not insurers of the safety of the children in their care. The foreseeability of harm to pupils in the class or at the school is the test of the extent of the [day care provider's] duty to safeguard her pupils from dangerous acts of fellow pupils....

*Id.* at 591, 495 S.E.2d at 747 (internal citations and quotations omitted).

In *Royal*, the plaintiff's eight-year-old grandson attended a pool party at the home of the defendants. 136 N.C. App. at 467, 524 S.E.2d at 601. While the children at the party were being supervised by a parent, the plaintiff's grandson drowned. *Id.* at 468, 524 S.E.2d at 601-02. Relying on *Pruett*, the Royal Court determined that "adult hosts or supervisors have a duty to the children to exercise a standard of care that a person of ordinary prudence, charged with similar duties, would exercise under similar circumstances. As with students, 'the amount of care due . . . increases with the student's immaturity, inexperience, and relevant physical limitations.' " *Id.* at 471, 524 S.E.2d at 603-04 (quoting *Payne v. N.C. Dept. of Human Resources*, 95 N.C. App. 309, 314, 382 S.E.2d 449, 452 (1989)).

We find that the relationship between a camp and its campers is analogous to the relationships at issue in *Pruitt* and *Royal*. Thus, consistent with those cases, we hold that camps and their employees have a duty to their campers to exercise the same standard of care that a person of ordinary prudence, charged with the duty of supervising campers, would exercise under the same circumstances. Moreover, as noted in both cases, this duty of care is relative to the camper's maturity. Thus, the foreseeability of harm to the individual camper is the relevant test which defines the extent of the duty to safeguard campers from the dangerous acts of others. *Pruitt*, 128 N.C. App. at 591, 495 S.E.2d at 747.

## B. Breach

[2] Having defined the applicable duty of care, we must now determine whether there is any genuine issue of material fact as to whether defendants breached their duty to Summer. Plaintiffs first argue that defendants breached their duty by "negligently failing to maintain a safe environment for [Summer] while she played [t]he Game." Specifically, plaintiffs cite the following undisputed evidence that they claim create a genuine issue of material fact: (1) the Game occurred in a wide, heavily wooded area; (2) the Game occurred late at night; (3) adult camp staff participated in the Game with minor campers; and (4) the executive director, assistant director, and camp director did not supervise the Game.

However, plaintiffs overlook several other undisputed facts which are relevant to our inquiry. At the time the Game was played, Summer was sixteen years old. Defendants specifically restricted the Game to senior high campers and required them to be with a partner while playing the Game for safety purposes. In addition, adult camp counselors and staff members were present as participants in and supervisors of

the Game. These procedural safeguards adequately establish that defendants acted reasonably in their supervision of the Game, particularly in light of the maturity level of the senior high campers who participated in it. Thus, defendants did not breach their duty to Summer by conducting the Game.

[3] Plaintiffs also contend defendants were negligent and thus liable for Crawford's actions because they failed to adequately train him. Specifically, plaintiffs allege that defendants (1) failed to have written rules prohibiting relationships between staff and campers; (2) failed to teach Crawford and the staff that they should never be alone with a camper; and (3) failed to communicate that certain types of interactions with campers were prohibited.

To support their allegations at the hearing on the motion for summary judgment, plaintiffs submitted an affidavit from Scott Arizala ("Arizala"), a summer camp consultant and author of a book explaining the best practices for camp staff. Arizala stated in his affidavit that:

> the policies and procedures [of defendants' camp] are below the standard of care applicable to a summer camp . . . and do not conform to industry best practices. They do not include a clear statement prohibiting a staff member from being alone with a camper, and they demonstrate a disregard for the principle that at least two staff members must be present when working with campers.

> There was a clear lack of training and ongoing culture of improving and learning with an emphasis on the safety of children or the inappropriateness of staff to camper relationships.

Arizala's opinion was based solely on his review of the camp's written policies and procedures. However, several of defendants' staff members testified in their depositions that they were *orally* instructed that two staffers must be present at all times when dealing with campers and that they were also warned to be very careful about any physical or romantic relationships with campers. Most importantly, Crawford submitted an affidavit in which he averred that he knew his conduct with Summer was "against camp policies," and "inappropriate and prohibited." Thus, while Arizala's affidavit may create an issue of fact regarding whether defendants had an adequate written policy regarding sexual relationships between camp staff and campers, it does not establish that no such policy existed. On the contrary, the undisputed evidence is that

Crawford and other camp staff members were made aware that sexual relationships with campers were prohibited.

It is also undisputed that prior to his employment in 2008, Crawford provided a personal disclosure indicating that he had not had any criminal convictions, that he had never been dismissed, suspended or asked to resign from a job, and that he had never had a complaint lodged against him for sexual molestation, abuse or harassment. Additionally, defendants checked the National Sex Offender Registry to ensure that Crawford was not disqualified from employment. Defendants also received a favorable recommendation in a telephone interview with a trusted reference. Finally, Crawford was hired in 2007 and his employment was very positive that summer. Based on the prior investigation and his positive performance in 2007, Crawford was re-hired for the summer of 2008. Taken together, this undisputed evidence demonstrates as a matter of law that defendants acted reasonably in its training and hiring of Crawford and that Crawford's conduct which harmed Summer was unforeseeable by defendants.

We therefore conclude that defendants presented substantial evidence that they adhered to the standard of care required for camp supervisors safeguarding campers from danger, taking into the consideration the maturity and experience levels of the senior high campers. Defendants were not negligent in either their planning and supervision of activities such as the Game or their training and supervision of their employees. Since there was no evidence that defendants breached their duty to Summer, the trial court correctly determined that defendants were entitled to summary judgment. This argument is overruled.

## IV. Contents of Defendants' Brief

[4] In both the fact and argument sections of their brief, defendants included a description of evidence concerning certain post-incident activities in which Summer engaged for the apparent purpose of arguing that, since Summer's parents did not have full knowledge of and control over those activities, defendants could not have been expected to control her prior activities either. In view of the fact that the evidence, when taken in the light most favorable to plaintiffs, indicates that Summer was the victim of a sexual assault and the fact that defendants' argument in reliance on the information concerning Summer's post-incident activities appears to assume a consensual encounter, we have difficulty seeing how this information was relevant to the issues before the Court in this case, which involved an appeal from the trial court's decision to grant summary judgment. In view of the potential harm to individuals in

Summer's position from the inclusion of this sort of information in filings before this Court and the fact that such information is of no value to the Court for purposes of appellate review of an order such as this one, we encourage the Bar in this State to consider carefully whether such information is really relevant to the issues being litigated on appeal before including such information in their filings with this Court.

## V. Conclusion

Defendants did not breach their duty of care to Summer by failing to maintain a safe environment at the camp. There was no evidence which would have allowed defendants to anticipate Crawford's actions towards Summer or take additional reasonable steps to prevent them. Since there are no genuine issues as to any material facts, the trial court properly granted defendants' motion for summary judgment.

Affirmed.

Judges ERVIN and DILLON concur.