Filed 7/27/17

# CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JERRY TAYLOR,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>ALTON TRIMBLE et al.<br><br>Defendants and Respondents. | B276723<br>(Los Angeles County<br>Super. Ct. No. BC570536) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge. Affirmed.

Sharifi Firm and Scott Michael Good for Plaintiff and Appellant.

Mark R. Weinder & Associates and Kathryn Albarian for Defendants and Respondents.

Following the drowning death of his five-year old son, Jaylen, in the swimming pool owned by respondents Alton and Judith Trimble, appellant Jerry Taylor brought suit against respondents for general negligence and premises liability.[1]  Finding that respondents owed no duty of care, and that there was no evidence a dangerous condition on their property contributed to the tragedy, the trial court granted summary judgment.  Appellant contends he raised issues of fact as to respondents' duty of care and the dangerousness of the conditions in and around the pool.  Respondents contend the appeal should be dismissed as it was from the nonappealable order granting summary judgment.

We exercise our discretion to treat the premature appeal as an appeal from the judgment and address the trial court's decision on the merits.  With respect to appellant's claim of negligent supervision, we conclude that where, as here, the homeowner, having initially assumed responsibility for supervision of the child, turned over such responsibility to an adult close relative who accepted it and did not thereafter relinquish it, the homeowner owed no duty of care to protect the child.  With respect to appellant's claim of premises liability, we conclude he failed to raise a triable

---

[1]     Appellant's complaint also named Jaylen's mother Tywanna Sanders as a defendant.  Sanders cross-claimed against respondents.  Sanders is not a party to this appeal.  References to "Trimble" herein are to Alton Trimble.

issue of fact as to causation.  Accordingly, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In the cause of action for general negligence, the complaint alleged that respondents "failed to supervise and pay adequate attention" to Jaylen.  In the cause of action for premises liability, the complaint alleged that respondents "ignored and/or allowed dangerous conditions in and around the swimming pool . . . ."

Respondents moved for summary judgment.  In their statement of undisputed facts (SOF), respondents established that on June 1, 2014, they hosted a gathering at their home.  Jaylen came with his mother, Tywanna Sanders.  Neither knew how to swim.  When Sanders first arrived, Trimble watched Jaylen in the "kiddie" or wading area, separated from the main pool by a low rock wall, eight to nine inches above the main pool water level.[2]  When Jaylen's grandfather, Donald Green, a Captain for the Los Angeles City Fire Department, arrived, he told Trimble he would take over supervising Jaylen.[3]  Green allowed Jaylen

---

[2]     Sanders did not bring a flotation device for Jaylen and testified she rarely required him to use one.  After Trimble agreed to watch Jaylen, Sanders left to go to the store. When she returned, Jaylen was still in the wading area being supervised by Trimble.  Sanders spent most of the day inside the Trimbles' house.

[3]     Green testified at his deposition that when he arrived at the party, he told Trimble he would watch Jaylen.  Trimble had
*(Fn. continued on the next page.)*

3

to play in the shallow end of the main pool.  At some point, Green lost sight of Jaylen.  Green heard a girl scream "'Where is the little boy?'"  Green stood up and saw Jaylen underneath the water.  He jumped in and pulled the boy out.  Efforts by Green and others to resuscitate Jaylen were unsuccessful.

In opposition to respondents' motion for summary judgment, appellant presented evidence that respondents had made modifications to the pool in 2013, by changing its surface "from a light to a dark color," and adding a Jacuzzi, a waterfall, and the wading area.[4]  On the day of the incident, there was nothing separating the shallow portion of the main pool from the deeper end.  Respondents did not provide life vests for persons using their pool.

Appellant did not dispute that upon arriving, Green agreed to watch Jaylen.[5]  He presented evidence -- excerpts

not put Jaylen in the main pool because he was not willing to watch him there.  Green said he would "sit there and watch him . . . in the shallow end of the main pool."  Green also testified that he never turned over his responsibility to watch Jaylen to anyone else.

Sanders testified that she saw Trimble in the house and did not ask him who was watching Jaylen because she assumed another adult or group of adults was doing so.  Sanders further testified that Green had supervised Jaylen at other pool parties.

[4]    Appellant did not dispute that respondents obtained a county permit when the modifications were made.

[5]    Appellant claimed to dispute a number of the facts set forth in respondents' SOF, but instead referenced evidence pertaining
*(Fn. continued on the next page.)*

4

from Trimble's deposition -- establishing that Trimble told Sanders her son would have to stay in the wading area because he could not swim, and that Trimble advised Green to keep the boy in the wading area.  Approximately 30 minutes after Green agreed to watch Jaylen, Trimble saw Green inside the house and was "shocked" because he did not know who was watching Jaylen.  Trimble went outside and saw Jaylen riding on the back of an older girl in the deep end of the main pool and three other adults around the pool.  The girl and the other adults said Green had approved the girl's actions.  Trimble told the girl not to take anyone who could not swim into the deep water and told Green, when he came out of the house, it was "'not okay.'"  Green said "I got it." Trimble again advised Green to keep Jaylen in the wading area, and said:  "This is on you.  You got to watch him.  He's your responsibility."   Trimble remained concerned about Jaylen, and was "tempted to send him home . . . ."

Appellant also submitted the declaration of expert Brad Avrit, a civil engineer and expert in civil and safety engineering, human factors and risk management.  Avrit asserted that the pool was in an unsafe condition because: (1) the surfacing on the bottom was dark, obscuring the bottom of the pool; (2) respondents failed to have handy lifesaving equipment, such as a pole, rope or life ring; and (3)

---

to independent facts, which should have been set forth in his counterstatement of facts.  Despite this procedural irregularity, we consider all the evidence presented in the opposition.

respondents failed to provide flotation devices for the children swimming in the pool.[6] Avrit further contended that the Jacuzzi, waterfall and slide, all in use on the day of the incident, added to the unsafe condition of the pool by agitating the water, further obscuring the bottom of the pool and making it difficult to hear in the pool area.[7] He opined

---

[6] Avrit claimed that at the time of the incident, respondents' swimming pool was not maintained in accordance with the applicable building codes. However, the only code he referenced stated: "The owner or the owner's designated agent shall be responsible for the maintenance of buildings and structures . . . ." Avrit also claimed that respondents were "in violation of the recommended guidelines and industry standards for swimming pools" by failing to provide arm flotation devices to the children on the day of the incident. However, the only standard he cited was from a booklet entitled "Overall Safe Operation and Maintenance of Your Inground Pool," published by the National Spa & Pool Institute, which stated: "Plan ahead for potential emergency situations by owning and being familiar with basic lifesaving equipment and procedures. Have at poolside a device such as a solid pole, a rope or a life ring, which can provide immediate assistance to a person in trouble. Practice using these devices correctly to be ready in an emergency. Only use these devices for emergencies. Do not allow children to play with lifesaving equipment."

[7] Avrit cited a booklet published by the National Spa & Pool Institute, "The Sensible Way to Enjoy Your Inground Swimming Pool," for the proposition that "For safety's sake, any user of your pool must be able to clearly see the bottom drain or bottom of the pool . . . ." The sentence, quoted only partially in the declaration, concludes, "so as to be able to make intelligent decisions about jumping, sliding or diving."

that had Jaylen been provided "arm flotation devices" or had the bottom of the pool been more visible and the noise minimized, "it is more likely than not that Jaylen Taylor's fatal incident would have been prevented."

The court granted the motion for summary judgment. The court found respondents owed no duty of care, because "Green had explicitly undertaken supervision of [Jaylen,] and Sanders was on the premises." The court further found that the Avrit declaration "fail[ed] to create a triable issue of material fact regarding whether the pool constituted a dangerous condition," and that neither appellant nor cross-complainant "offered evidence showing that any dangerous condition of the pool caused [Jaylen's] death."[8]

## DISCUSSION

A. *Timing of Appeal*

The order granting summary judgment was filed June 8, 2016. Notice was waived. On August 5, 2016, nearly two months later, appellant filed his notice of appeal. Respondents did not file a proposed judgment until August 24, 2016. The trial court entered the proposed judgment on August 29, 2016.

---

[8]    Respondents raised a number of objections to Avrit's declaration. The trial court did not rule on the objections, but the language quoted above indicates the court considered Avrit's declaration in making its ruling.

Appellant contends we should dismiss the appeal because the notice was filed prior to entry of judgment and refers to the June 8 order rather than the August 29 judgment.  We have discretion to treat an appeal from an order granting summary judgment as an appeal filed after the entry of judgment and elect to do so here.  (*Mukthar v. Latin American Security Service* (2006) 139 Cal.App.4th 284, 288 (*Mukthar*).)[9]

B.  *Standard of Review*

A defendant's "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that [the defendant] is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)  When a defendant moves for summary judgment, "'its declarations and evidence must either establish a complete defense to plaintiff's action or

_____

[9]     Nearly two months passed after the court issued its summary judgment order before appellant noticed the appeal; he could reasonably have been concerned that the judgment or notice of its entry had been lost.  Had respondent promptly filed the proposed judgment, any confusion could have been avoided.  (See *Mukthar*, *supra*, at p. 288 ["the ends of justice" served by deeming notice of appeal to have been filed after entry of judgment:  "With the time running and uncertainty about whether there was a judgment on file, counsel correctly chose to file a notice of appeal in order to protect the right to appeal.  With no judgment in hand, counsel could only refer in the notice of appeal to the order granting summary judgment"].)

demonstrate the absence of an essential element of plaintiff's case. If plaintiff does not counter with opposing declarations showing there are triable issues of fact with respect to that defense or an essential element of its case, the summary judgment must be granted.'" (*Saldana v. Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1510-1511, quoting *Gray v. America West Airlines, Inc.* (1989) 209 Cal.App.3d 76, 81.)

"'On appeal from a summary judgment, an appellate court makes "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law."'" (*DuBeck v. California Physicians' Service* (2015) 234 Cal.App.4th 1254, 1264.) We consider "all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) . . . ." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) The evidence presented by the party opposing summary judgment and the reasonable inferences therefrom are accepted as true. (*Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562, 575.) But it is "not enough [for the opposing party] to produce just some evidence"; the evidence must be "of sufficient quality to allow [a] trier of fact to find the underlying fact in favor the party opposing the motion for summary judgment." (*McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1105; accord, *Casey v. Perini Corp.* (2012) 206 Cal.App.4th 1222,

1239-1240; *Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1093.) "'"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute."' [Citation.]" (*DuBeck v. California Physicians' Service, supra*, at p. 1264.)

## C. *Negligent Supervision*

A defendant is not, by virtue of his or her status as a homeowner, responsible for supervising children who are invited onto his or her property where the children's parents are present and supervising or expected to be supervising the child. (*Padilla v. Rodas* (2008) 160 Cal.App.4th 742, 748-749 (*Padilla*), citing *Englund v. Englund* (1993) 246 Ill.App.3d 468 [615 N.E.2d 861], *Moses v. Bridgeman* (2003) 355 Ark. 460 [139 S.W.3d 503] and *Herron v. Hollis* (2001) 248 Ga.App. 194 [546 S.E.2d 17].)[10] It is "'"normally . . . the

---

[10] *Englund v. Englund, Moses v. Bridgeman*, and *Herron v. Hollis* all involved parents of drowned children who sued the owner of the property on which the tragedy occurred; all three courts concluded that when a parent was present, it was the parent's responsibility -- not the property owner's -- to supervise the child. (See, e.g., *Englund v. Englund*, [615 N.E.2d at p. **867] ["It was plaintiff's [the mother's] responsibility to make sure that [her daughter] did not gain access to the pool, and she could have done so by positioning herself in an area from which she could have seen [the girl] play in the sand [near the pool], or by latching the pool gate . . . [I]t was not reasonably foreseeable *(Fn. continued on the next page.)*

10

duty of a parent or other adult having primary supervisory control over the child to see to it that a child would not be going into a place of obvious danger,"'" such as a swimming pool. (*Padilla, supra*, at p. 750, quoting *Herron v. Hollis, supra*, at p. **19.) Where, as in the present case, the danger ""'is open and obvious rather than latent or obscure, no greater duty is imposed upon a host of a child under parental supervision than would be owed to the parent. . . . [T]he parents' failure to properly supervise [their] child is the proximate cause of a subsequent injury. The host is not negligent because he has performed his duty of having the premises as safe for his guest as for his family and himself."'" (*Padilla, supra*, at p. 749, quoting *Moses v. Bridgeman, supra*, [at pp. **509-510].)

The rule is different where the defendant homeowner has expressly or impliedly agreed to supervise a child while the minor is on the premises. In that circumstance, the homeowner may be liable for negligent supervision. (See *Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1054-1055 [recognizing potential liability of couple who took son's non-

that plaintiff would fail to supervise her daughter adequately, and it is more desirable to place the substantial burden of supervising plaintiff's daughter upon plaintiff rather than the homeowners"].) Multiple other courts have reached the same conclusion. (See, e.g., *Horace ex rel. Horace v. Braggs* (Ala. 1998) 726 So.2d 635, 637; *Workman v. Dinkins* (N.D. Ill. 2006) 442 F.Supp.2d 543, 551; *Lampkin v. Covington Providence Homeowners Assoc.* (W.D.N.C., Nov. 10, 2011, Case No. 3:10-cv-271-RJC-DCK) 2011 U.S. Dist. LEXIS 130800 at p.*21.)

swimming friend to lake and allowed him to go out on paddleboard, for "fail[ure] to supervise him adequately" (*id.* at p. 1054)]; *Margaret W. v. Kelly R.* (2006) 139 Cal.App.4th 141, 152-153, 154 [host parent assumed special relationship with children invited into her home for sleepover to protect them from "foreseeable perils" (*id.* at p. 154)]; *Pamela L. v. Farmer* (1980) 112 Cal.App.3d 206, 212 [in inviting children into her home and assuring parents it would be safe for them to play there, homeowner assumed special relationship with children].) "'The measure of precaution which must be taken by one having a child in his care, who stands in no relation to the child except that he has undertaken to care for it, is that care which a prudent person would exercise under like circumstances.'" (*Wallace v. Der-Ohanian* (1962) 199 Cal.App.2d 141, 144.)[11]

---

[11]     Our research has found no California case in which a negligent supervision claim arose in the context of a pool party. But such claims have arisen in other jurisdictions, and courts have expressed no hesitation in concluding that a homeowner who has volunteered to supervise a young swimmer may be liable if he or she does so negligently. (See, e.g., *Royal v. Armstrong* (2000) 136 N.C.App. 465, 471 [524 S.E.2d 600] [where child was dropped off at the home of family hosting a swimming party, homeowners "were required to exercise reasonable care supervising children lawfully using the pool at their invitation" (*id.* at p.**603)]; *Hemphill v. Johnson* (1998) 230 Ga.App. 478, 480 [497 S.E.2d 16] [question of fact whether homeowner who undertook to supervise drowning victim and other children who came to her house to swim used reasonable care]; see also *Anderson v. Mitts* (2004) 87 Ark.App. 19, 25 [185 S.W.3d 154], *(Fn. continued on the next page.)*

Here, respondent Trimble initially agreed to supervise Jaylen when the boy and his mother arrived at the party. The issue is whether he was negligent in performing this supervision or was thereafter negligent in delegating such supervision to the boy's grandfather, Green. Like the trial court, we conclude the undisputed facts establish he was not. Trimble watched Jaylen in the wading area until Green arrived and declared he (Green) would watch Jaylen. Trimble then turned over supervision of Jaylen to Green, a responsible adult who was not only the boy's grandfather, but also a fireman. Green assured Trimble he would carefully watch Jaylen in the shallow end of the main pool. Thereafter, Trimble was in and out of the house. Sanders saw him inside the house and assumed he had passed on the responsibility of supervising her son to another responsible adult or group of adults. She did not question that decision or suggest it was inappropriate for him to have done so. Sanders had trusted Green to supervise Jaylen's pool activities in the past. We see no reason why a party who

quoting Dan B. Dobbs (West 2001) The Law of Torts, § 236 ["[I]f the landowner (or anyone else) has been entrusted with and accepted responsibility for supervising a child, he owes a duty of reasonable care to provide supervision, regardless of the child's status on the land" (*id.* at p. **157, italics omitted)]; *Laser v. Wilson* (1964) 58 Md.App. 434, 445 [473 A.2d 523] ["The responsibility for supervision of [a] child may be relinquished or obtained . . . upon the mutual consent, expressed or implied, by the one legally charged with the care of the child and by the one assuming the responsibility" (*id.* at p. **528)].)

agreed to take on the supervision of a child may not delegate that responsibility to another responsible adult, and find no basis for imposing liability on the first party for the second party's potential negligence.

We find support for our conclusion in *Royal v. Armstrong*, *supra*, [524 S.E.2d 600]. There, the hosts of a pool party (the Armstrongs) agreed to watch eight-year-old Darion, dropped off at their home by his mother. (*Id*. at p. **601.) A few minutes after opening the pool for use by Darion and the other children present, Mrs. Armstrong asked the parents of the guest of honor (the Burtons) to watch the swimmers. Mr. Burton was a former lifeguard. (*Ibid*.) While the Burtons were watching, Darion drowned. (*Id*. at p. **602.) The court found "no evidence" that the Armstrongs' direct supervision was negligent. It next considered "whether it was reasonable for [them] to delegate the supervision of the children to the Burtons," and concluded: "It does not appear to us unreasonable for a parent to delegate the pool-side duties to another equally capable individual. In the case at bar, [the Armstrongs] left the children in the care of two able-bodied adults with no physical handicaps that would prevent them from rescuing a child in trouble. Mrs. Armstrong specifically asked the Burtons to watch the children before she went inside to work on the food. By doing so, she entrusted her own three children, who were among those playing in and around the pool, to the care of the Burtons. Moreover, the Burtons' son was the guest of honor, and the record suggests that other

14

Burton children also may have attended the party; consequently, the Burtons had ample incentive to monitor the swimmers closely. Defendants were readily accessible should trouble arise, and, in fact, Mr. Armstrong was able to help Mr. Burton administer CPR. All the evidence indicates that defendants reasonably delegated supervision duties to the Burtons, while no evidence indicates that the delegation was negligent. Therefore, [the Armstrongs] were not negligent in delegating the duty of attending the swimmers to the Burtons." (*Id*. at p. **604.)

In an attempt to raise an issue of fact concerning negligent supervision, appellant points to evidence that Trimble advised Green to keep Jaylen in the wading area, evidence that Trimble was "shocked" to see Green inside the house, and evidence that Trimble contemplated sending Jaylen home. The fact that an adult responsible for supervising a child has a different view of how to keep the child safe does not require other adults in the vicinity to step in and take control. Young children, even infants, may safely be taken into adult-sized swimming pools as long as the supervising adult uses due care. Jaylen could have been safe in the main pool area had Green stayed close and kept his eye on him, as he said he would. Moreover, Trimble did question Green's decision to leave Jaylen in the care of a minor and obtained Green's assurance that he would not do so again. There is no evidence that Green left his post near Jaylen after that incident. It was not unreasonable for Trimble to defer to Green once Green agreed to assume

15

supervisory duties, and the fact that Trimble remained concerned and continued to check on Green and Jaylen is not evidence of negligence.[12]  In sum, the trial court did not err in granting summary judgment on the negligent supervision claim.

### D.  *Premises Liability*

An owner of real property is "not the insurer of [a] visitor's personal safety . . . ."  (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1206.)  However, an owner is responsible "'for an injury occasioned to another by [the owner's] want of ordinary care or skill in the management of his or her property. . . .'"  (*Cabral v. Ralphs Grocery Co.* (2011) 51

---

[12]     In *Englund v. Englund*, where the plaintiff similarly contended that summary judgment was improper because "the homeowners admitted their negligence" by telling the plaintiff "'[w]e just got too relaxed,'" the court stated:  "We have previously found that the homeowners did not have the primary duty to watch Lauren [the victim] . . .  [E]ven if the homeowners acknowledged that they were lax in their attention to Lauren, this does not relieve plaintiff of her duty to Lauren and does not render the homeowners liable for Lauren's death."  (*Englund v. Englund, supra,* [615 N.E.2d at p. **868]; see also *Bradley v. Welch* (2006) 94 Ark.App. 171, 180 [228 S.W.3d 559, *565] ["While [hosts of pool party] may have planned the party and engaged in the ordinary, instinctual supervision that most adults undertake when they are around children, there is no showing that [the hosts] took over supervision from [the child's grandmother, who brought him to the party and remained nearby"].)

Cal.4th 764, 771, quoting Civ. Code, § 1714, subd. (a).)
Accordingly, landowners are required "to maintain land in
their possession and control in a reasonably safe condition"
(*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th
666, 674, disapproved in part on another ground in *Reid v.
Google, Inc.* (2010) 50 Cal.4th 512), and to use due care to
eliminate dangerous conditions on their property. (*Lackner
v. North* (2006) 135 Cal.App.4th 1188, 1197; see *Rowland v.
Christian* (1968) 69 Cal.2d 108, 119 ["The proper test to be
applied to the liability of the possessor of land in accordance
with section 1714 of the Civil Code is whether in the
management of his property he has acted as a reasonable
man in view of the probability of injury to others . . . ."].)

"To establish liability on a negligence theory against an
owner for injuries caused by a dangerous condition of the
property, a plaintiff must prove duty, breach, causation, and
damages." (*Hall v. Rockcliff Realtors* (2013) 215 Cal.App.4th
1134, 1139, citing *Ortega v. Kmart Corp.*, *supra*, 26 Cal.4th
at p. 1205.)[13] The trial court concluded appellant had failed
to raise a triable issue of fact as to causation. We agree.

---

[13] Proof that the defendant violated a statute or regulation,
including administrative regulations and local building code
provisions, may give rise to a presumption of negligence in
specified circumstances under the doctrine of negligence per se.
(Evid. Code, § 669; *Elsner v. Uveges* (2004) 34 Cal.4th 915, 927;
*Gravelin v. Satterfield* (2011) 200 Cal.App.4th 1209, 1218; *Ritter
& Ritter, Inc. Pension & Profit Plan v. The Churchill
Condominium Assn.* (2008) 166 Cal.App.4th 103, 119.) Appellant
does not identify any statute or regulation violated by
*(Fn. continued on the next page.)*

Appellant bases his claim of premises liability on (1) respondents' resurfacing the pool from "light to dark"; (2) their addition of a Jacuzzi, waterfall and slide; (3) the lack of a floating rope or other device dividing the shallow end of the main pool from the deep end; and (4) the ease of access from the wading area into the main pool.[14]  There is no evidence

respondents.  In his declaration, Avrit referred to informal industry safety standards warning pool owners that "'any user of your pool must be able to clearly see the bottom drain or bottom of the pool'" and urging them to "'plan ahead for potential emergency situations by owning and being familiar with basic lifesaving equipment and procedures'" such as "'a solid pole, a rope or a life ring.'"  Even were such informal industry safety standards sufficient to give rise to a presumption of negligence in the same manner as a statute or regulation, these standards would not assist appellant.  When relying on negligence per se, a plaintiff must do more than establish the violation; he or she must also establish that the injury resulted from an occurrence which the statute or other provision was designed to prevent, and that the injured party was one of the class of persons for whose protection the statute or other provision was adopted.  (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 462-463.)  The industry's recommendation that users be able to see the bottom of the pool is to protect those who are "jumping, sliding or diving."  Its recommendation that a pole, rope or life ring be available is to help someone struggling in the water.  There was no evidence that Jaylen's drowning resulted from jumping, sliding or diving in the water, or that a pole, rope or life ring would have saved him.  Nor, as we discuss below, is there any evidence that Jaylen was not visible when he sank in the pool.

[14]  Avrit also blamed the failure of respondents to make available arm flotation devices or "floaties."  Appellant does not mention this in his argument or suggest that it contributed to the
*(Fn. continued on the next page.)*

18

these factors played a part in Jaylen's drowning. (See *Padilla*, *supra*, 160 Cal.App.4th at p. 752 [where defendant shows that plaintiff cannot reasonably expect to establish a prima facie case of causation, trial court is justified in awarding summary judgment].) There was no evidence that the color of the surfacing prevented anyone from seeing or rescuing the boy. Green testified that the moment he heard the girl ask about Jaylen, he stood up and saw the child at the bottom of the pool.[15] Similarly, there was no evidence that a floating rope separating the deep and shallow ends of the pool would have prevented his drowning. And because Jaylen had been placed in the main pool at the time of the tragedy, the minimal separation between the wading area and the main pool was beside the point.

---

"dangerous condition" of the pool. Nor does he contend that a pool owner is obliged to provide flotation devices for every child who uses the pool.

[15] Neither this Court nor the trial court was required to accept Avrit's opinion that the color of the surfacing contributed to the incident. An expert opinion that does not contain "a reasoned explanation illuminating why the facts have convinced the expert" need not be relied on. (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1118; accord, *Sargon Enterprises, Inc. v. University of Southern Cal.* (2012) 55 Cal.4th 747, 770 ["'[T]he matter relied on must provide a reasonable basis for the particular opinion offered, and . . . an expert opinion based on speculation or conjecture is inadmissible'"].)

With respect to the Jacuzzi, waterfall and slide, we note that noise and agitated water are normal conditions in and around pool parties, regardless of Jacuzzis, waterfalls or slides. Guests create noise and agitate the water by swimming and getting in and out of the pool, and it is unreasonable to expect the owners of a pool to impose quiet and calm. (Cf. *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 473 [defendant did not breach duty of care merely by causing machine to produce noises or emissions necessary to its regular operation].) Moreover, there is no evidence that noise and ripples in the water from this equipment contributed to the tragedy by obscuring Jaylen's struggles or preventing onlookers from hearing him; he may well have slipped under quietly.[16] Close and constant supervision is the only reliable method of keeping young, non-swimming children safe in an adult pool. Absent such supervision, no duty we could impose on pool owners would prevent similar tragedies from occurring. Accordingly, the trial court properly granted summary judgment on the record before it.

---

[16] We note that a Centers for Disease Control and Prevention advisory attached to Avrit's declaration provided the following advice: "When a young child or inexperienced swimmer is in or around water, always be within arm's length. . . . Drowning can happen very quickly and quietly."

## DISPOSITION

The judgment is affirmed.

**CERTIFIED FOR PUBLICATION**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

21