Filed 10/5/20  Tabita v. City of Los Angeles CA2/1

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LAURIZA TABITA,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF LOS ANGELES,<br><br>    Defendant and Respondent. | B297258<br><br>(Los Angeles County<br>Super. Ct. No. BC644836) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura A. Seigle, Judge.  Affirmed.

Alderlaw, Michael Alder and Jennifer P. Burkes for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Scott Marcus, Chief, Civil Litigation Branch, Blithe S. Bock, Assistant City Attorney, and Matthew A. Scherb, Deputy City Attorney, for Defendant and Respondent.

————————————

Plaintiff Lauriza Tabita appeals the trial court's grant of summary judgment in favor of defendant City of Los Angeles (City). We have jurisdiction under Code of Civil Procedure section 904.1, subdivision (a)(1). We affirm.

## BACKGROUND

The event forming the basis of this lawsuit is alleged to have occurred at Seoul International Park, located at 3252 San Marino Street in Los Angeles, which is maintained by the City of Los Angeles. Within the park is a parking lot. Since at least 1952, the same set of four steps (and partial bottom step) has provided passage from the parking lot down to the park level and gym. The stairs have no handrails. Instead, the stairs are bounded on both sides by walls. The stairs and walls are in good shape—no chips, cracks, holes, or the like—and no signs that handrails had ever been installed. There are no records of any request for maintenance or repair related to the stairs, nor any other evidence of complaints or incidents.

For the June 7, 2016 election, the County of Los Angeles used the gym at Seoul International Park as a polling place. Tabita was to be an election inspector for the County. She arrived at the park that morning, parked in the parking lot, and, without incident, descended the four steps and entered the gym. She had no problem with the stairs and did not need to hold on to anything. Once inside, she found her co-workers and asked them to fetch supplies from her truck. Without incident, three female co-workers ascended the stairs to the truck and, carrying boxes and equipment, descended them back to the gym. Then, Tabita herself ascended the stairs, again without incident, and moved her truck.

2

Returning to the gym, Tabita descended the stairs with coffee in her right hand and a folder under her armpit. She took three of the steps down just fine, but when she went for the fourth step with her left foot, she "hit the edge" of the third step and lost her balance. She tried to reach for support towards her left with her empty left hand, but she found no rail, twisted her foot, and fell back. When reaching out, she did not grab or try to grab the side wall. After a few minutes, she returned to the gym, decided to leave, walked back up the same stairs, and drove herself to obtain medical care.

Tabita's complaint, filed on December 22, 2016, alleges a single count of negligence based on a dangerous condition of public property. Tabita alleges that "defendants and each of them, carelessly and negligently owned, inspected, controlled, constructed, repaired, designed and maintained said [stairs] in a dangerous, hazardous, and unsafe condition to pedestrians, including the plaintiff herein," and that the defendants had actual and constructive notice of such conditions. The complaint seeks general and special damages according to proof arising out of the alleged injury.

On December 28, 2018, the City filed a motion for summary judgment. The City asserted three legal grounds for this motion: (a) so-called trail immunity under Government Code section 831.4, subdivisions (a) and (b); (b) lack of evidence of dangerous condition or causation under Government Code section 835; and (c) so-called design immunity under Government Code section 830.6. Tabita opposed the motion based primarily on the basis of a declaration submitted by retained expert Mark J. Burns. The City objected to the Burns declaration on various grounds. On reply, the City also submitted a declaration from a civil engineer

3

employed by the City, David Takata, rebutting assertions in the Burns declaration as to the application and effect of building codes that existed at the time of the construction of the stairway in 1952.

Following a hearing on March 15, 2019, the trial court issued a written decision granting the City's motion for summary judgment. The trial court sustained the City's objections to paragraphs 11 and 12 of the Burns declaration. On the merits, the trial court concluded that neither trail immunity nor design immunity applied to shield the City from liability. However, the trial court concluded that Tabita had not established the existence of any triable issue of material fact as to a dangerous condition of the stairway causing Tabita's accident, and granted summary judgment in favor of the City. Tabita timely appealed.

## DISCUSSION

### A. Standard of Review

We review a "summary judgment de novo, applying the same legal standard as the trial court." (*Anderson v. Fitness Internat., LLC* (2016) 4 Cal.App.5th 867, 876; accord, *Biancalana v. T.D. Services Co.* (2013) 56 Cal.4th 807, 813.) A court must grant summary judgment if the papers submitted show there is no triable issue as to any material fact. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843; see Code Civ. Proc., § 437c, subd. (c).)

A defendant has met its burden of showing that a cause of action has no merit if it demonstrates that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant

4

meets this burden, the burden shifts to the plaintiff to prove the existence of a triable issue of fact regarding that element of its cause of action or that defense. (*Ibid*.)

On appeal from a summary judgment, "we independently examine the record in order to determine whether triable issues of fact exist to reinstate the action." (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) "In performing our de novo review, we view the evidence in the light most favorable to the plaintiff[ ] as the losing part[y]. (*Ibid*.; accord, *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) In doing so, we liberally construe the plaintiff's evidentiary submissions and strictly scrutinize the defendant's evidence in order to resolve any evidentiary doubts or ambiguities in plaintiff's favor. (*Wiener v. Southcoast Childcare Centers, Inc.*, *supra*, at p. 1142.)

## B.    Existence of Dangerous Condition

Tabita alleges that a dangerous condition on property owned and maintained by the City caused her alleged injuries. Government Code section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:  [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under

Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Government Code section 830, subdivision (a), provides in part: " 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

Government Code section 830.2 provides: "A condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."

Government Code section 830.5, subdivision (a), provides in pertinent part: "[T]he happening of the accident which results in the injury is not in and of itself evidence that public property was in a dangerous condition."

The City contended below and contends here that the steps were not in a dangerous condition within the meaning of Government Code section 830, subdivision (a). The undisputed evidence submitted to the trial court showed that these stairs were built approximately 70 years ago, in 1952. There was no evidence of anyone having trouble with the stairs, or requesting repair or maintenance. The stairs were in a "very good" physical condition. Tabita's accident occurred during daylight when the

stairs could be plainly seen and traversed.  Tabita herself had used the stairs earlier that morning without incident.  Tabita's three election co-workers used the same stairs to carry supplies to the gymnasium.

Tabita's opposition to this aspect of the City's motion was based entirely on the Burns declaration, which asserted two grounds on which the stairs should be considered dangerous: (1) the absence of handrails alongside the four steps, and (2) excessive depth of each tread (the horizontal surface), exceeding 14 inches.  These contentions were contained in paragraphs 11 and 12 of the Burns declaration, to which the trial court sustained the City's objections.

    1.    *Trial Court's Evidentiary Rulings*

The trial court ruled that paragraphs 11 and 12 of the Burns declaration were inadmissible.  We review evidentiary rulings made on summary judgment motions for abuse of discretion.  (*In re Automobile Antitrust Cases I & II* (2016) 1 Cal.App.5th 127, 141; *Ryder v. Lightstorm Entertainment, Inc.* (2016) 246 Cal.App.4th 1064, 1072.)  This is particularly applicable in review of rulings on expert testimony, which regularly implicate the superior court's gatekeeper function. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 [setting forth the standard generally in the context of a pre-trial evidentiary motion] (*Sargon*); *San Francisco Print Media Co. v. The Hearst Corp.* (2020) 44 Cal.App.5th 952, 961-963 [applying this standard on summary judgment]; *Esparza v. Safeway, Inc.* (2019) 36 Cal.App.5th 42, 51-52 [same]; *Property California SCJLW One Corp. v. Leamy* (2018) 25 Cal.App.5th 1155, 1163-1164 [same]; *Taylor v. Trimble* (2017) 13 Cal.App.5th 934, 945 & fn. 15 [same].)

The party challenging an evidentiary ruling "has the burden to establish an abuse of discretion." (*O'Neal v. Stanislaus County Employees' Retirement Assn.* (2017) 8 Cal.App.5th 1184, 1199.) The appellate court interferes with the superior court's ruling "only if the party can show that no judge could reasonably have made the same" decision. (*Ibid.*) That ruling must be " 'so irrational or arbitrary that no reasonable person could agree with it.' [Citation.]" (*Sargon*, *supra*, 55 Cal.4th at p. 773.) A court's discretion, however, "is not unlimited" and "must be exercised within the confines of the applicable legal principles." (*Ibid.*)

Burns states that he has a Bachelor of Science in Mechanical Engineering as well as a Juris Doctorate, and professes to have "a specialized understanding of safety, human factors, and best practices when constructing, managing, and maintaining infrastructure."

Paragraph 11 of the Burns declaration asserts that the treads of the steps in this stairway were too deep, exceeding 14 inches. Burns states: "The design and construction of the subject stairway was inherently dangerous. The treads were measured to range from 14-5/8[ inches] to 15[ inches]. Numerous studies regarding safe stairway design (attached herein as Exhibit '2'), conclude that treads should not exceed 14[ inches] as unusually long treads force stair users into unnatural gait mechanics on descent wherein the user must take an abnormally long stride between treads or take two steps on each tread. Either of these abnormal actions could easily and unreasonably cause a misstep incident."

The trial court sustained the City's evidentiary objections to paragraph 11 on the grounds of hearsay and improper expert opinion. The trial court wrote: "The statement about the

conclusion of the numerous studies and the two attached studies are hearsay, as [the City] objected. The studies and their conclusions about treads exceeding 14 inches are offered for the truth of the matter asserted, and Burns did not establish the reliability of the studies, that experts in his field of expertise rely on the attached studies as background information, or that the studies contain premises generally accepted in his field. (*People v. Sanchez* (2016) 63 Cal.4th 665, 685.) . . . And his bare conclusion that the treads were dangerous is not sufficient. The [c]ourt may reject an expert's conclusion 'that does not contain "a reasoned explanation illuminating why the facts have convinced the expert" . . . . [Citations.]' (*Taylor v. Trimble*[, *supra*,] 13 Cal.App.5th [at p.] 945, [fn]. 15; *Bay Area Rapid Transit Dist. v. Superior Court* (1996) 46 Cal.App.4th 476, 482 ['The value of opinion evidence rests not in the conclusion reached but in the factors considered and the reasoning employed'].)"

On appeal, Tabita complains that "[t]he trial court focused solely on the two (2) articles cited by Burns. In doing so, the trial court ignored Burns' qualifications and also his statement that his opinions were also based on his educational background, professional training, and experience analyzing similar cases. . . . His opinions regarding the height of the stairs and their causal connection to the fall should have been considered by the trial court." However, the trial court correctly ruled that Burns's opinion represented no more than a "bare conclusion" unsupported by a reasoned explanation. The ruling to exclude paragraph 11 was not an abuse of discretion.

Paragraph 12 of the Burns declaration, to which the trial court sustained the City's evidentiary objections on the grounds of lacking foundation and speculation, stated that the Los

9

Angeles City Building Code existing at the time the stairs were built required all exterior stairways to have one or more handrails, and further stated: "The purpose of requiring handrails is to provide assistance and a means to arrest a fall should balance be lost while utilizing the stairway. The aforementioned code deficiency created an unsafe condition and directly caused Ms. Tabita's incident as after losing balance due to the unusually long treads, she had no opportunity to grasp a railing and prevent the fall."

The City correctly notes that Tabita has failed to challenge the trial court's ruling sustaining its objections to paragraph 12 of the Burns declaration in her appeal. Thus, any contention of error on this ruling is waived. (*Soto v. Union Pacific Railroad Co.* (2020) 45 Cal.App.5th 168, 182 ["a party that fails to 'attack the [trial court's evidentiary] rulings on appeal . . . forfeit[s] any contentions of error regarding them' "]; *Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41 [challenges to evidentiary rulings must be raised in opening brief]; *Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014-1015 [absent challenge, appellate court considers all evidence excluded to be properly excluded]; cf. *Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 599-600 [challenge to rulings on evidence forfeited by failure to properly raise them in briefing].)

In reply, Tabita attempts to salvage this omission by arguing that the trial court's ruling excluded only certain portions of paragraph 12, and that the objections were "overruled" as to other portions.[1] The trial court's written

---

[1] This same contention was urged by Tabita's counsel at oral argument. However, from our reading of the City's objections and the trial court's sustaining of those objections, the

decision, however, does not make this distinction. The trial court's ruling excluding paragraph 12 of the Burns declaration was not an abuse of discretion. (*Taylor v. Trimble, supra,* 13 Cal.App.5th at p. 945, fn. 15; *Bay Area Rapid Transit Dist. v. Superior Court, supra,* 46 Cal.App.4th at p. 482.)

      2.    *Evidence of Dangerous Condition*

The trial court's ruling to exclude paragraphs 11 and 12 of the Burns declaration largely eliminated Tabita's ability to demonstrate the existence of triable issues of material fact as to the existence of a dangerous condition within the meaning of Government Code section 830. Because the trial court nonetheless addressed the merits of Burns's statements in its decision, we will do the same.

As to the depth of the treads, the only evidence proffered by Tabita (via Burns) was based on two studies that the trial court deemed inadmissible. At oral argument, the trial court told Tabita's counsel, "you could have gotten around this if the expert had laid the foundation for these two articles, if the expert had established their reliability and said that experts in my field typically rely on . . . these articles in concluding whether stair treads are dangerous or not. He didn't do that."

On appeal, Tabita argues that Burns did not need the studies at all: he could assert the treads were dangerous based simply on his own experience. This is not a legitimate detour

only sentence from the Burns declaration that would arguably survive under Tabita's interpretation is this: "According to the building permits attained from the City of Los Angeles, a permit for a 'Playground Clubhouse' was issued in 1949." This does not establish the existence of a triable issue of material fact as to dangerous condition.

around the principles set forth in *Sargon*. Burns gave his reasons—the studies—and the trial court properly exercised its discretion to reject them. Without the studies, Burns's statement that the stairs are "inherently dangerous" is simply an unreasoned conclusion, that does not establish a triable issue of fact. (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117 [disallowing "conclusory" opinion "unaccompanied by a reasoned explanation" because it "has no evidentiary value"] (*Jennings*).)

At the same time, the portions of paragraph 12 of the Burns declaration that Tabita claims were not excluded do not close the gap in establishing a dangerous condition of the stairway. The City and Tabita disputed whether the Los Angeles City Building Code in effect at the time this set of stairs was built required the installation of handrails. The excluded paragraph 12 of the Burns declaration asserts that the building code required a handrail, and that *ipso facto* the absence of such a handrail created a dangerous condition.

However, even if we were to assume that the applicable building code at the time these stairs were constructed required handrails, a code deficiency does not of itself establish dangerousness. (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1209 ["While it is true that the rattan mat did not comply with the [building code], it does not necessarily follow that the mat constituted a dangerous condition"]; *Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 928 ["The court properly found no foundation for [the expert's] opinion that noncompliance with certain building codes and standards made the crack dangerous"].)

12

Moreover, case law holds that the absence of a handrail, even if it could have prevented or moderated a fall, does not automatically create an *unreasonable* risk of harm. (*Darrach v. San Francisco County Medical Assn.* (1953) 121 Cal.App.2d 362, 365 ["The absence of a handrail at steps used by the public does not in itself indicate[ ] an unreasonable risk. [The a]ppellant does not cite any rule of law, and we do not know of any, which requires the outside steps of a building in public use always to be provided with a handrail"].) Unless the configuration of stairs and lack of handrail created a substantial risk, it does not constitute a dangerous condition. (*Davis v. City of Pasadena* (1996) 42 Cal.App.4th 701, 704; cf. *Belcher v. San Francisco* (1945) 69 Cal.App.2d 457, 458 [sustaining demurrer to negligence claim based on absence of handrails along steps of steeply sloping city sidewalk].) " '[L]iability is not to be fastened upon a municipality merely because it may appear that certain property, in nowise dangerous either in its construction or intended use, could possibly be made safer by other means.' [Citation.]" (*Dole Citrus v. State of California* (1997) 60 Cal.App.4th 486, 494 [design immunity].)

Thus we affirm the trial court's finding that Tabita failed to established a triable issue as to the dangerous condition of the stairway.

## C. Proximate Cause

To establish liability under Government Code section 830, subdivision (a), a plaintiff must not only prove the existence of a dangerous condition on the public property, but also "that the [plaintiff's] injury was proximately caused by the dangerous condition." (*Id.*, § 835.) Thus, Tabita must satisfy the causation requirement applicable to all tort claims: " ' " 'Causation' is an

13

essential element of a tort action.  Defendants are not liable unless their conduct . . . was a 'legal cause' of plaintiff's injury.  [Citations.]"  [Citation.]  "Generally, the burden falls on the plaintiff to establish causation." '  (*Whiteley v. Philip Morris, Inc.* (2004) 117 Cal.App.4th 635, 696 . . . ; *Brookhouser v. State of California* (1992) 10 Cal.App.4th 1665, 1677 . . . ['It is axiomatic that a defendant cannot be held liable in tort for an injury he or she did not cause'].)  'Causation is generally a question for the jury unless reasonable persons could not dispute the absence of causation, in which case it may be treated as a question of law.' (*Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 289 . . . .)"  (*Ulloa v. McMillin Real Estate & Mortgage, Inc.* (2007) 149 Cal.App.4th 333, 338.)  "To establish the element of actual causation, it must be shown that the defendant's act or omission was a substantial factor in bringing about the injury.  [Citation.]" (*Padilla v. Rodas* (2008) 160 Cal.App.4th 742, 752 [affirming grant of summary judgment for plaintiff's failure to establish causation].)

Tabita's opposition to the City's motion for summary judgment again relied solely on the Burns declaration to establish this element of her claim.

With regard to the depth of the treads on the stairway, Tabita's evidence of causation comes, again, from the excluded paragraph 11 of the Burns declaration.  There, Burns claims "unusually long treads force stair users into unnatural gait mechanics on descent wherein the user must take an abnormally long stride between treads or take two steps on each tread. Either of these abnormal actions *could* easily and unreasonably cause a misstep incident."  (Italics added.)

14

This opinion is speculative and not tethered to the case facts. For example, Burns does not give a reasoned analysis of the physical characteristics of Tabita herself, who took numerous successful steps on these stairs when not carrying coffee and a folder. Burns states that unusually long treads "could" cause a misstep, but he does not state this is *more likely than not* what happened to Tabita on these steps and how he reached such a conclusion. Burns also fails to cite any portion of the factual record to support his conclusion.

These omissions are fundamental. Expert opinion "unaccompanied by a reasoned explanation connecting the factual predicates to the ultimate conclusion, . . . has no evidentiary value because an 'expert opinion is worth no more than the reasons upon which it rests.' [Citation.]" (*Jennings, supra*, 114 Cal.App.4th at p. 1117; see, e.g., *Taylor v. Trimble, supra*, 13 Cal.App.5th at p. 945, fn. 15 ["Neither this court nor the trial court was required to accept [the expert's] opinion that the color of the surfacing contributed to the incident"].) The same is true for an expert opinion based on assumptions without evidentiary support, or based on speculative or conjectural factors. (*Jennings, supra*, at p. 1117.) And with causation testimony, the expert needs to give a reasoned explanation for why "it is *more probable than not* the negligent act was a cause-in-fact of the plaintiff's injury." (*Id.* at p. 1118.) Burns's opinion does not meet this standard, and the superior court correctly exercised its discretion to exclude it.

With respect to the absence of a handrail, addressed in the excluded paragraph 12 of the Burns declaration, Tabita similarly failed to establish a triable issue of fact on causation. Tabita's testimony indicates that she lost her balance while going down

15

the steps, and that she was unable to regain her balance due to the lack of a handrail.  She did not claim that the lack of handrail caused her to lose her balance in the first place.  (See, e.g., *Blodgett v. B.H. Dyas Co.* (1935) 4 Cal.2d 511, 513 [affirming judgment of non-suit against the plaintiff on causation; " 'The evidence shows that the lack of the handrail was neither the proximate nor any cause of [the] plaintiff's fall.  Any violation of the ordinance by the defendant would, therefore, be immaterial' "]; *Hazelwood v. Gordon* (1967) 253 Cal.App.2d 178, 181 ["Assuming arguendo that [the] appellant's evidence showed the stairway failed to meet statutory standards [of the applicable Los Angeles City Ordinances in the construction of the stairway], she did not sustain her burden of proving that such violations *proximately* caused her injuries"]; *Holmes v. Moesser* (1953) 120 Cal.App.2d 612, 614 [affirming directed verdict for the defendant on causation; "the uncontradicted evidence discloses that the proximate cause of [the] plaintiff[']s . . . injury was the slipping of her foot off the step which caused her to fall and be injured and not the absence of a handrail on the stairway"].)

Tabita also did not submit admissible evidence that if there had been a handrail, she would have regained her balance or not been injured after she initially lost her balance.  The only evidence submitted by Tabita to the trial court on this point was in the excluded paragraph 12 of the Burns declaration.[2]  After

---

[2] Tabita's counsel asserted at oral argument that the fact that the trial court discussed these issues even after sustaining the City's evidentiary objections to the Burns declaration somehow meant that the trial court had not really excluded these portions of the Burns declaration after all.  However, we view the

discussing the 1948 Los Angeles City Building Code, Burns states, "The purpose of requiring handrails is to provide assistance and a means to arrest a fall should balance be lost while utilizing the stairs. The aforementioned code deficiency created an unsafe condition and directly caused . . . Tabita's incident as after losing balance due to the unusually long treads, she had no opportunity to grasp a railing and prevent a fall."

Burns's statements are not evidence of a probability that Tabita would have arrested her fall if a handrail had been present. As the trial court noted, even the language he uses illustrates, at most, a handrail would have presented a possibility, or as Burns puts it, an "opportunity," for Tabita to stop her fall. He points to no evidence for the conclusion that the absence of a handrail "directly caused . . . Tabita's incident." He does not address where a handrail might have been in relation to Tabita's position on the stairway. He does not say that he measured the distance from Tabita to the location where a handrail would have been placed, as well as the length of Tabita's arm, to show that a handrail would have been within her reach as she fell.

On appeal, Tabita now argues that she "did not need to present an expert in order to create a factual dispute regarding causation," and that "the jury should have been permitted to draw upon their ordinary human experiences to decide the question of causation." Tabita argues that her own deposition testimony—which was before the trial court only because the City had submitted certain excerpts of that testimony in support of its

---

trial court's discussion of these matters as giving Tabita the benefit of the doubt as non-moving party.

17

motion—should have been sufficient to establish a triable issue as to causation.

We disagree. Tabita's deposition testimony stated, "when I was going to take the fourth step with my left foot, I hit the edge of the stair on the same step, the third step, and I lost my balance. So I—with my left hand I tried to grab the rail and there wasn't any. So I lost my balance. I twisted my foot. I hurt myself and I fell back." This testimony does not establish that the absence of a handrail proximately caused her injury. For example, Tabita did not testify that her hand grazed, or even approached, the left wall bounding the stairs. In fact, she testified when she reached for a rail, she did not grab the wall and fell *backward*.

As for the remnant of paragraph 12 of Burns's declaration that Tabita contends was not excluded by the trial court's ruling sustaining of the City's evidentiary objections, that too would not constitute admissible evidence to create a triable issue on causation.[3] It was at best a naked conclusion without explanation or reasoning, irrespective of Tabita's contention that "Mr. Burns had the education, qualifications, and experience to express his opinions about the stairs." A proffered expert opinion based only on the expert's claimed knowledge and experience, without setting forth reasoning and support for that opinion, is not properly admissible to demonstrate a triable issue of material fact. (*Sargon, supra,* 55 Cal.4th 747.) An expert cannot

---

[3] Our review of the record indicates that the trial court expressly excluded Burns's conclusions in paragraph 12 on the grounds of "speculation." We disagree with Tabita's contention that these conclusions survived the trial court's evidentiary ruling.

speculatively turn theoretical possibilities into realities. (*Jennings*, *supra*, 114 Cal.App.4th at p. 1118.) "California courts have been particularly chary of expert testimony based on assumptions that are not supported by the evidentiary record . . . ." (*People v. Wright* (2016) 4 Cal.App.5th 537, 545.)

Thus, we affirm the trial court's ruling that Tabita failed to demonstrate a triable issue as to causation.

## D. Conclusion

In accordance with Code of Civil Procedure section 437c, subdivision (c), considering all of the evidence set forth in the papers, except the evidence to which objections were made and sustained by the trial court, and all inferences reasonably deducible from the evidence, we conclude that the City satisfactorily demonstrated that there was no triable issue as to any material fact and that the City, as moving party, was entitled to a judgment as a matter of law.

## E. Trail Immunity

The City urges as an alternative ground for affirmance of the summary judgment that the opinion in a recent case, *Lee v. Department of Parks & Recreation* (2019) 38 Cal.App.5th 206, decided after the trial court rendered its decision in this case, would support the City's characterization of the stairs as part of a "trail" for purposes of the immunity under Government Code section 831.4, subdivisions (a) and (b). Tabita argues that this argument is foreclosed by the City's failure to cross-appeal the trial court's ruling against it on the trail immunity question.

In light of our holding above that summary judgment was properly granted, we do not deem it necessary to address this additional issue here.

19

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.

NOT TO BE PUBLISHED


                                        SINANIAN, J.*


We concur:



    CHANEY, J.



    BENDIX, Acting P. J.

---

    **\*** Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.